**GREYHOUND LINES, INC., Appellant,**

**v.**

**Mrs. Ray A. CRAIG et al., Appellees.**

**No. 103.**

Court of Civil Appeals of Texas.
Houston (14th Dist.).

June 5, 1968.

Rehearing Denied July 3, 1968.

George H. Kolb, John G. Tucker, Orgain, Bell & Tucker, Beaumont, for appellant.

W. James Kronzer, Curtiss Brown, W. W. Watkins, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellees.

BARRON, Justice.

This is a consolidated suit for personal injuries filed by Aaron Leger, Carolyn Sue

Synott, Mrs. Ray A. Craig, Henry W. Edwards and wife, Doris E. Edwards, John T. Guy and wife, Elaine Guy, against Greyhound Lines, Inc., and All Woods, Ltd., and its partners. After a trial with a jury based upon favorable findings for plaintiffs, the trial court rendered judgment against Greyhound Lines, Inc. for the following amounts: Aaron Leger, $525,000.00; Miss Synott, $25,000.00; Mr. and Mrs. Craig, $25,000.00; Mr. and Mrs. Edwards, $55,500.00; John T. Guy and wife, $32,400.00. The court ordered that All Woods, Ltd., and its partners, be absolved of any liability and denied the claims as between the defendants for contribution and indemnity.

On motion for new trial the trial court ordered a remittitur of $175,000.00 in regard to the recovery of Aaron Leger, reducing the recovery to $350,000.00. The trial court also ordered a remittitur of $10,000.00 on the recovery of Henry W. Edwards, and reduced the amount of the recovery of Mr. and Mrs. Edwards to $45,500.00. Remittiturs were ordered by the trial court under protest in accordance with Rule 315, Texas Rules of Civil Procedure.

This appeal is by Greyhound Lines, Inc. as appellant. The above named plaintiffs are appellees.

The case was brought as the result of a bus-truck accident occurring on August 27, 1965, between an east-bound Greyhound bus and a west-bound truck owned and operated by All Woods, Ltd. Plaintiffs were passengers on the Greyhound bus. The bus and the truck collided head-on on U. S. Highway 90 a short distance west of Vinton, Louisiana. The impact was severe, and the driver of the truck was fatally injured. Many passengers on the bus were severely injured, some of them fatally. The accident may be termed severe and horrible, and the injuries resulting were generally extensive and serious.

Liability of the appellant, Greyhound Lines, Inc., is not questioned in this appeal. Appellant assigns 29 points of error. The first three points of error complain that the trial court erred in instructing the jury that it could consider "diminished capacity to work and labor" from the date of the accident to the date of trial, included in damage issues numbers 29, 33 and 35 concerning Mr. Leger, Mr. Edwards and Mr. Guy. Appellant contends that the court should have inquired only as to actual loss of time or earnings from the date of the accident until the date of trial. This subject has been debated extensively and has resulted in some confusion to trial and appellate courts in Texas. It is true that the amount of earnings lost in the past or that will probably be lost in the future are evidentiary of diminished earning power, and such specific evidence is admissible on the issue. But "loss of earnings" or "loss of time" is of no moment unless each is related to the diminished earning capacity of the injured party. If a plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown under the evidence by comparing his actual earnings before and after his injury. McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712. But specific proof of actual earnings and income are evidentiary of the ultimate issue, and the true measure of damages is the diminished earning power or earning capacity of the plaintiff, in the past or in the future, directly resulting from the injuries he sustained in the accident. Dallas Ry. & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550, 552; Gulf W. T. & P. Ry. Co. v. Abbott, 24 S.W. 299, 300 (Tex.Civ.App.), no writ; McIver v. Gloria, supra, 169 S.W.2d at p. 713; Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, 618; Green v. Rudsenske, 320 S.W.2d 228, 235–236 (Tex. Civ.App.), no writ. As stated in the latter case, the fact that an employer pays plaintiff's salary after injury on altruistic motives or for earned time is immaterial so far as plaintiff's right to recovery is concerned. We hold that earning power or earning capacity is the ultimate issue, and that the trial court did not err in submit-

ting the damage issues and instructions to the jury.

 Contention is made that the trial court erred in refusing specifically to instruct the jury that it should not consider or award damages attributable to the protrusion of Mrs. Craig's eye or any pain, suffering or disability attributable thereto or attributable to her dizziness. The trial court did instruct the jury that it could not take into consideration damages to Mrs. Craig attributable to hyperthyroidism. Since the jury could have found that the eye protrusion was attributable to hyperthyroidism and that her dizziness resulted from the accident, we overrule appellant's contention. The medical testimony supports the inference that Mrs. Craig's dizziness and vertigo were attributable to the accident. See Port Terminal Railroad Ass'n v. Ross, 155 Tex. 447, 289 S.W.2d 220, 227. Further, we overrule the contention that there was reversible error in the failure of the court to instruct the jury that it should not consider damages attributable to Mrs. Guy's headaches. Mrs. Guy did not testify concerning headaches, and we do not believe the jury was mislead by a failure specifically to instruct thereon under the circumstances. It is only in exceptional cases that a contrary rule applies. See Rule 434, T.R.C.P. See and compare Tyler Mirror & Glass Co. v. Simpkins, 407 S.W.2d 807, 815 (Tex.Civ.App.), writ ref., n. r. e.

Appellant further contends that the verdict of the jury was so excessive as to all plaintiffs that a new trial should be ordered by this court, and that the jury was motivated by bias, prejudice, sympathy and a disregard for the evidence or by some other improper motive. It is further contended that the evidence is insufficient and against the overwhelming weight and preponderance of the evidence to support submission of the instructions on future incapacity; that the alleged errors are incurable by remittitur and a new trial is required. Complaint is further made as to

Leger and others alternatively that this court must order remittiturs, that the remittiturs required by the trial court in the cases of Leger and Henry W. Edwards are insufficient, and that this court should require further remittiturs based upon the alleged excessiveness of the verdicts and insufficiency of the evidence to support the jury's assessment of damages.

 These points of error require some discussion of the facts, especially as to Leger, whose final recovery after the trial court's remittitur was $350,000.00. It must be further noted that appellee, Leger, contends by cross-point that the remittitur granted by the trial court reducing the $525,000.00 verdict to $350,000.00 constitutes a manifest abuse of the discretion of the trial court and resulted in an unjust verdict as to Leger. Appellee requests this court to restore the reduction for such reasons.

The evidence shows that Leger was about 23 years of age at the time of the accident. He went to the seventh grade in school and his grades were fairly poor. He went to work in the cotton fields, picking cotton, digging potatoes and breaking corn. He can no longer do any of these things. At the age of 18 he went to work offshore for J. W. Bates working in the galley, cleaning dishes and fixing dinner. He returned to work in the cotton fields but he thereafter went to work offshore for Brown & Root as a roustabout. He carried sacks of cement and lifted pipe. He stayed with the latter company for approximately two years. He earned $400.00 for fourteen days of work, being off seven days and returning for another fourteen days. Immediately prior to the accident he had been working in Rockdale, Texas, as a bricklayer apprentice earning $2.75 an hour, forty hours a week. Prior to that he had worked for a contractor for about nine weeks helping build board roads in the oil fields at $1.25 an hour. He was agile before the accident. He is not now qualified to do any work which requires the use of

his hands, legs and back. He knew nothing of the accident, because he went to sleep shortly after entering the bus. When he became conscious he was pinned under one of the bus seats. He smelled smoke and was scared. A welder cut him out from under the seat, and he was the last person to be taken off the bus. He was taken to the emergency room at the Sulphur Hospital and was conscious at the time. He was then taken to St. Patrick's hospital at Lake Charles, Louisiana. He there realized that one of his legs was almost off, and he knew that a part of his hand was going to have to come off. He did not know the lower leg was injured because he could not feel it. His right shoulder was broken, both legs were broken, and he had cuts on his face and legs. His cuts and his shoulder have healed. He has required surgery four times on his left leg, and his right leg was so smashed up they could not do anything about it but put it in a cast. He had fractured his left foot in 1964 prior to the accident, he fractured his leg in an automobile accident in 1966, and he fractured his left knee in an accident in December, 1966. The accidents set him back to some extent. The trial court by proper instruction excluded consideration by the jury of those items not related to the accident in question. In the bus accident both legs were broken, the right and left femurs sustained compound fractures. There was a large open wound of the left tibia. The right fibula had sustained a compound fracture. There was a dirty wound, with an avulsion of the skin, ground in with dirt and asphalt, throughout the right foot and ankle. The wound had ruptured the anterior and the posterior tibial arteries and there was no pulsation in the foot and there was no function of the foot. His left hand had an extremely mangled thumb and the index finger with a deep laceration involving the flexor tendon. On the thigh bone on the right there was a large wound present on the outer aspect, which was caused by the fracturing of the thigh bone. The thigh bone was broken in many pieces on the right side. The thigh bone on the left side had sustained compound fractures, and the bone was sticking out through the skin. The left fracture was not believed to be comminuted. It was necessary to amputate the foot and a part of his leg. There were no fractures on the left leg below the knee, but the skin had been cut. He was left with only two fingers on the left hand. Lacerations over the left tibia and on the face were sutured. His face was cut, but there were no abdominal, chest or central nervous system injuries.

Leger was in bed after the accident for about seven months. It was about 7½ months before he started using crutches. His left leg remained pretty stiff and he had to "kind of slide it along." It was about a year before he was provided with an artificial limb. During that time he used crutches and a wheel chair. His artificial leg seemed heavy and it irritated a lot at first. His left leg is about two times as big as his right. About all he can do with his right hand is to hold such things as a cigarette. He has done no work since the accident, though he told Dr. Meuleman that he would like to be rehabilitated if he could. While trying to walk on smooth surfaces he has to watch his right leg, and if he kicks it too much he might fall, or if he doesn't kick it enough he might fall. It hurts to step up on a curb and if he walks over a block his leg swells and hurts. When he walks his left leg starts swelling. At the time of the bus accident he weighed about 150 pounds. He now weighs 190 pounds.

There was extensive medical testimony concerning this man's injuries, and all of it clearly showed that he was totally and permanently disabled. He has suffered and still suffers great pain and anguish. His medical witnesses termed the case a "misery case" and stated that Leger was doomed to permanent and total disability. Though his doctor testified that Leger was too young to be dependent on public welfare for the rest of his life, and that he perhaps could drive a car or a cab, such

regular activity seems doubtful. His life expectancy was shown to be 48.60 years.

While we agree with the able trial court that an award of $525,000.00 is excessive, after due consideration by each member of this court, we have concluded that an award of $350,000.00 is supported by the evidence. The trial judge, Honorable Ewing Werlein, heard the testimony, evaluated the evidence and concluded that the jury's award was excessive in the sum of $175,000.00. On the other hand we cannot properly and in good conscience sit in judgment arbitrarily on Leger's damages and his obviously painful, permanent and disabling injuries. The evidence is to be viewed most favorably to the award, and in the absence of a showing of passion, prejudice or other improper motive to influence the jury, or unless the verdict is so shockingly and grossly excessive as to indicate such passion and prejudice by reason of the size alone, the amount assessed by the jury will not be set aside. Life expectancy tables are not binding, and no particular discount factor is required. While the Table of Working Life for Males, 1955, United States Department of Labor, shows that the cash sum of $350,000.00 would provide an annual income for Leger in excess of that which he might be expected to earn, we cannot say with accuracy that he could not have earned that much or more without resort to pure speculation. Moreover, that investment and that formula are not binding. As stated in Dallas Transit Co. v. Hammer, 404 S.W.2d 85, 87 (Tex. Civ.App.), no writ:

"The reported decisions in other cases on this point are of little help to us because no two cases involve the same injuries, pain or disability. The decision in each case must necessarily be based on the facts of that case. What the future holds for anyone, in the way of earning capacity or freedom from pain can never be determined with mathematical certainty. * * *"

This court may require remittitur when, after consideration of the amount of the verdict and the evidence bearing upon the amount, it finds that the verdict is excessive and that the cause should be reversed for that reason only. Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017. In the alternative, if the verdict is so excessive or "so tainted with passion or prejudice to vitiate it" the court may reverse and remand for a new trial. World Oil Co. v. Hicks, 103 S.W.2d 962 (Tex.Com.App.), opinion adopted; Pioneer Bus Co. v. Ward, 422 S.W.2d 550 (Tex.Civ.App.), no writ. There need be no extraneous proof of passion or prejudice or other improper motive, since excessiveness alone is sufficient to show that the jury either disregarded the evidence or responded to some other improper motive. Dallas Ry. & Terminal Co. v. Farnsworth, supra; Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835. And the trial court, in deciding whether a verdict is excessive and a remittitur is required to cure the error, should be governed by the same standard as the courts of civil appeals. When a trial court requires a remittitur we must determine the order's propriety by deciding whether the trial judge abused his discretion in making the order or remittitur. Flanigan v. Carswell, supra. We cannot restore the trial court's remittitur unless we believe the order of remittitur was manifestly unjust. Under the facts and circumstances of this case we believe that the trial court was well within his discretion in ordering the remittitur as to Leger and that his action was appropriate. We refuse to order further remittitur and we hold that the evidence is sufficient to support a verdict of $350,000.00. While such an award is liberal and reaches the outside limits of propriety, we refuse further to disturb the jury's findings when injury and disability of this kind and type are involved. We hold the same rules applicable to the order of remittitur in the case of Mr. Edwards.

It is contended that the remaining verdicts are excessive, and that the evidence does not warrant the awards found by the jury. We have carefully reviewed all of the evidence regarding the injuries and damages to each remaining plaintiff. While we cannot say that we would have found damages as did the jury in all circumstances, the evidence does sustain the awards as to each of the remaining plaintiffs. We cannot hold that the awards were not supported by the evidence. Some of the testimony shows that the injuries sustained by the plaintiffs were the result of the severity of the collision and the terrible consequences of the accident. All of the injuries were serious and caused the appellees painful and rather extensive physical and emotional damage. Although we do not specifically and precisely set out the injuries, the testimony of the injured plaintiffs and the medical evidence show that they were of a continuing nature and were in reasonable probability permanent at least to some degree. There is no formula for exact measurement of pecuniary compensation for physical pain and mental anguish or for future disability and medical expenses. These matters are for the jury, the trier of facts. Under the circumstances, the evidence in this case, and the inferences to be legally drawn from the testimony, we cannot say that the remaining awards are excessive. While any given court might believe that some of the awards are excessive, when there is substantial evidence to support the jury findings we refuse to substitute our judgment for that of the jury. We hold that the evidence is sufficient to support each finding of the jury. George C. Vaughn & Sons v. Dyess, 323 S.W.2d 261 (Tex.Civ. App.), writ dismd.; Green v. Rudsenske, 320 S.W.2d 228 (Tex.Civ.App.), no writ; Robinson v. Ashner, 357 S.W.2d 611 (Tex.Civ.App.), affd., 364 S.W.2d 223 (Tex.Sup.); Applebaum v. Michaels, 384 S.W.2d 148 (Tex.Civ.App.), writ ref., n. r. e.; General Motors Acceptance Corp. v. Cornelius, 424 S.W.2d 498 (Tex.Civ.App.), writ ref., n. r. e.; Missouri Pacific Railroad Co. v. Sparks, 424 S.W.2d 12 (Tex. Civ.App.), writ ref., n. r. e.

Finding no reversible error, the judgment of the trial court is affirmed.