J.V. HARRISON TRUCK LINES,
INC., Appellant,

v.

Jackie Howard LARSON, et al, Appellee.

No. B14–82–805CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 10, 1983.

Rehearing Denied Dec. 8, 1983.

Roger Townsend, Fulbright & Jaworski, Dan Ryan, Ryan & Marshall, William Amaimo, Jay Hirsch, Hicks, Hirsch, Glover, Robinson & Sehiness, Houston, for appellant.

Stephen W. Hanks, Helm, Pletcher & Hogan, Jerry D. Conner, Conner & Dreyer, Houston, for appellee.

Before PAUL PRESSLER, ROBERTSON and CANNON, JJ.

## OPINION

PAUL PRESSLER, Justice.

This is an appeal from a judgment for the plaintiff in a suit brought under both the Wrongful Death Act, TEX.REV.CIV.STAT. ANN. art. 4671 (Vernon 1982), et seq., and the Survival Statute, TEX.REV.CIV.STAT. ANN. art. 5525 (Vernon 1982). Appellees sought damages from Harrison for the death of Cecile Yvonne Fischer, under the theory of respondeat superior. Appellee, John Fischer, also sued Willie Webb, Harrison's driver. Judgment was against both Harrison and Webb. Webb has not appealed.

On Saturday, May 28, 1977, Willie Webb was employed by J.V. Harrison as an over-the-road truck driver. For some time Harrison's trucks had hauled large coils of steel from Houston to Merco Manufacturing in Dallas. On the day in question, Webb was making the Houston to Dallas trip hauling three coils of pressed steel. Each coil weighed between 17,000 and 19,000 pounds. Accompanying Webb on this trip was Cecile Yvonne Fischer. Webb and Fischer had been friends for some time. They met the night before the accident at a bar where she told Webb that she did not want to go home that night. Webb asked her to accompany him on his run to Merco. About midnight, they left for Dallas in the truck. During the trip, Webb stopped at a rest area near Huntsville. Because of the long rest stop, Webb did not arrive at Merco until after the other Harrison drivers making the Houston to Dallas run had already unloaded and departed.

The coils were to be unloaded by a crane. Due to the length of the flat bed trailer and the size of the building where the crane was located, all three coils could not be unloaded at the same time. Unless the front coil was moved toward the other two coils, the truck driver would have to back the trailer several times. Although that method would take only four or five minutes longer, the standard practice of the Harrison drivers was to roll the front coil toward the other two, secure the loose coil, back the truck and unload all three coils. To roll the front coil on the trailer, the chains securing the coil and the four by four boards would be removed. The driver would then back the truck and tap his brakes causing the front coil to roll toward the other two coils. After the rolling coil hit the other two and before it rolled back to the front of the trailer, someone would place a four by four board in front of the coil. The testimony was conflicting as to whether this procedure could be accomplished by the driver alone or whether a second person was required to place the board in front of the coil.

Upon arrival Webb unfastened the front coil and started to back the truck as was standard procedure among Harrison drivers. According to Harley King, a Merco employee, Webb backed quite rapidly and

when he hit the brakes, the detached coil hit the other coils and bounced ten to fifteen feet instead of the usual one or two feet. Ms. Fischer was outside the truck and the coil rolled toward her. She attempted to stop it by throwing a two by four board in front of it. The coil did not stop and fell on her cutting off her right arm and then coming to rest on the lower half of her body.

King ran to the plant office and phoned for an ambulance and for a fork lift to move the coil. King testified that when he returned, Ms. Fischer's eyes were open and moving but she appeared to be unconscious. While King was making the phone calls, Webb went to Ms. Fischer's side. He testified that she said, "Willie, help me." A few minutes later Ms. Fischer died.

John D. Fischer, the surviving husband of Cecile Fischer, sued both Harrison Truck Lines and Webb. The children from a previous marriage and the parents of the deceased sued Harrison alone. The two suits were consolidated and tried to a jury. It found that Webb was engaged in the service of Harrison Truck Lines and was acting in furtherance of its business. The jury also found that Webb's negligence proximately caused the occurrence and held for the appellees on remainder of the special issues. Judgment was rendered thereon.

Appellant's first point of error contends that the trial court erred in denying its motion for judgment n.o.v. because the special issues submitted and the jury findings did not support the judgment. The second point of error alleges the trial court's overruling of Harrison's objections to the charge was error. The key issue in both is whether the trial court submitted proper special liability issues under the theory of respondeat superior. Appellant argues that the trial court failed to submit a necessary and controlling issue, and without it the verdict does not support the judgment.

■ The trial court must submit the controlling or ultimate issues raised by the pleadings and evidence. Tex.R.Civ.P. 279. *Braugh v. Phillips,* 557 S.W.2d 155 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.).

Once the controlling issues have been submitted, it is not error to refuse to submit other issues and various shades of the same issue. *Braugh,* supra.

■ Appellant claims that the trial court erred by not submitting a special issue inquiring whether Webb was authorized to accept riders and to ask for assistance in unloading. Appellant argues that if Webb were not so authorized and were expressly told not to take riders or ask for assistance, appellant could not be held liable under the doctrine of respondeat superior. We disagree. A master may be held liable for the act of his servant, even if the act is contrary to express orders, if it is done within the general authority of the servant. *Medical Slenderizing Inc. v. State,* 579 S.W.2d 569 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *International G.N.R. Co. v. Anderson,* 82 Tex. 516, 17 S.W. 1039 (1891).

■ The general rule is that a master is liable for the acts of his servant committed within the scope of the servant's authority, in the furtherance of the master's business and for the accomplishment of the object for which the servant is employed. *Broaddus v. Long,* 135 Tex. 353, 138 S.W.2d 1057 (1940). However, appellant argues that if the agent or employee lacked authority to invite or permit a guest to ride in the employer's vehicle, the principle or employer will not be liable to the guest for injuries sustained while riding in the vehicle and caused by the employee's negligence. In support of this proposition appellant cites *Kirklin v. Standard Coffee Co.,* 114 S.W.2d 263 (Tex.Civ.App.—Dallas 1938, no writ); *Magnolia Petroleum Co. v. Winkler,* 40 S.W.2d 831 (Tex.Civ.App.—Eastland 1931, no writ) and *Thomas v. Southwestern Tumber Co.,* 181 S.W.2d 111 (Tex.Civ.App. —Waco. 1944, no writ). In our case, the fact that Webb may not have been authorized to accept riders is irrelevant. The invitation to ride was an act completely independent from the events during the unloading of the coils that caused the death of Ms. Fischer. Here the appellees do not complain of the invitation to ride but rather

the acts surrounding the unloading of the truck.

■ The relevant issue is whether the driver was acting within the scope of his general authority, in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. *Brooddus v. Long*, 138 S.W.2d at 1059. In special issue number one, the jury was asked:

Do you find from a preponderance of the evidence that at the time of the occurrence in question Willie Webb was engaged in the service of J.V. Harrison Truck Lines, Inc. and in furtherance of its business, whether on its premises or elsewhere?

Answer "We do" or "We do not"

Answer: We do.

Harrison requested but the trial judge refused to submit the following special issue:

Do you find from a preponderance of the evidence that J.V. Harrison Truck Lines, Inc. had either expressly or implicitly authorized William Webb to ask Cecile Yvonne Fischer to assist in the unloading of the steel?

Answer "We do" or "We do not."

Harrison argues that without submission of an separate issue on authorization, a master cannot be responsible for the acts of his servant under the theory of respondent superior. We disagree.

■ The authority given to a servant is only one factor that must be inquired into in order to hold the master liable for the servant's acts under respondent superior. Although its wording could have been improved by following the *Brooddus v. Long* test, Special Issue Number One was the controlling issue and the failure to submit the special issue requested by appellant was not error.

■ Harrison also requested the following explanatory instruction:

When an employee asks someone to assist in the employer's business, without the employer's knowledge and consent and contrary to the employer's instructions, he is not engaged in the service of his employer and the furtherance of its business.

In order to complain on appeal of the trial court'. refusal to submit an explanatory instruction, the complaining party must have submitted an instruction which is a substantially correct statement of the law. TEX.R.CIV.P. 279. Harrison's requested instruction is not such. An employer may be found liable for the acts of employee even if the employee acts contrary to the express instructions of his employer. Therefore the trial court did not err in refusing to submit appellant's requested special issue and explanatory instruction. Appellant's first two points of error are overruled.

Appellant's third point of error concerned the trial court's excluding from evidence an affidavit and deposition testimony by Webb. The affidavit stated that Harrison had a rule prohibiting riders, that Fischer knew of this rule and that Webb lacked authority to ask Fischer to help unload the truck. The affidavit was an out of court statement offered to prove the truth of the matter asserted. In order to be admissible it must fall within an exception to the hearsay rule.

■ Appellant argues that the affidavit was admissible as impeachment of Webb. In order to impeach a witness with a prior inconsistent statement, a proper foundation must be laid. In addition to establishing where, when and to whom it was made, the party who seeks to impeach a witness with a prior inconsistent statement must allow the witness to admit or deny making the prior statement. If on cross-examination the witness admits making the prior inconsistent statement, the impeachment is complete and the prior written statement is not itself to be admitted into evidence. 1 R. Ray *Texas Evidence* § 695 (3rd ed. 1980). *Commercial Standard Fire and Marine Co. v. Murphy*, 537 S.W.2d 497 (Tex.Civ.App.—Houston [14th Dist.], 1976 writ ref'd n.r.e.). Appellant failed to lay the proper predicate. When confronted with the affidavit, Webb admitted making the statements contained in it. Therefore,

it was not error to refuse to admit the affidavit itself into evidence.

The excluded affidavit and deposition testimony was also offered as evidence as to Fischer's state of mind as it related to the issue of her negligence. However, in order for the testimony of one witness as to the state of mind of another to be admissible, the witness must be able to show that basis on which he knew the other's state of mind. Here the offered evidence consisted of merely conclusory statements. The evidence was properly excluded.

Appellant argues that the affidavit was admissible as an admission by a party opponent. On the last day of the trial, appellant filed a Trial Amendment stating a claim against Webb for contribution or indemnity making Harrison and Webb party opponents even though they were both defendants. Although a statement by a party opponent is a recognized exception to the hearsay rule, 1A R. Ray, *Texas Evidence* § 1121 (3rd ed. 1980); the existence of a riders policy is irrelevant under our finding that it is inapplicable to the fact situation here. The portion of the affidavit dealing with Webb's authority to enlist assistance would be relevant to the issue of whether Webb was acting in furtherance of Harrison's business. However, when evidence that is admissible for only one purpose and against one party is excluded, the exclusion will not be the basis of reversal on appeal unless the proponent has clearly indicated for what purpose and against which party the evidence is admissible. *Kaplan v. Goodfried,* 497 S.W.2d 101 (Tex.Civ.App.—Dallas 1973, no writ). Here, appellant made clear the evidence was offered against Webb only but failed to explain for what purpose the evidence was offered. Appellant cannot now complain of the trial court's exclusion of the evidence after the appellant failed to state expressly and clearly the purpose for which the statement was admissible. Appellant's third point of error is overruled.

Appellant's fourth point of error asserts that the jury's award of $100,000 for conscious pain and mental anguish was excessive and that a remittitur is in order. Clearly a jury must award damages only upon the basis of evidence and cannot make an award based upon bias or prejudice. *A-Rocket Moving Company v. Arceneaux,* 605 S.W.2d 340, 341 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). *Greyhound Lines, Inc. v. Craig,* 430 S.W.2d 573 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). When deciding whether a jury award is excessive, the evidence is to be viewed most favorably to the award, and it will not be found excessive unless there is a showing that it was the result of passion or improper motive or unless the verdict is so "shocking and grossly excessive as to indicate such passion and prejudice by reason of the size alone...." *Greyhound,* 430 S.W.2d at 578. *See Hurst Aviation v. Junell,* 642 S.W.2d 856 (Tex.App.—Fort Worth 1982, no writ). Appellant has cited several cases in support of his argument. They involve different fact situations and are five to seventeen years old. Therefore, they are of limited helpfulness in determining the excessiveness of the jury award. The fact that an appellate court may have awarded a lesser sum if it were to have made the initial decision is irrelevant unless the award is so large that it shocks the conscience of the court. *A-Rocket Moving,* 605 S.W.2d at 342. *Bill Hendrix Auto Parts v. Blackburn,* 433 S.W.2d 237 (Tex.Civ.App. —Houston [14th Dist.] 1968, no writ). While this is a large award, it is not so large as to shock the conscience of the court. There is no evidence of any jury prejudice or bias. The jury observed the witnesses, weighed the evidence and assessed the damages. The record contains sufficient evidence to support the jury's award.

The judgment of the trial court is affirmed.

ROBERTSON, Justice, dissenting.

Under the principle of respondeat superior, unless the act of the servant is committed within the scope of the general authority of the servant in furtherance of the master's business and for the accomplish-

ment of the object for which the servant is employed, the master cannot be held liable for the servant's act. *Broaddus v. Long,* 135 Tex. 353, 138 S.W.2d 1057 (1940). The evidence shows that appellant was only the carrier; its trucks picked up the coils of steel from the docks in Houston and delivered them to Merco in Dallas. Weisinger, ex-chairman of the board for appellant, testified: "[I]t was the company's (Merco's) responsibility to unload my trucks ...; my rates are based upon shipper load and consignee unload ...; I didn't know it was being unloaded that way." In my opinion this testimony raised, at least, a fact issue of whether the act of Webb, in enlisting the assistance of the deceased to unload the truck, was an act committed "within the general authority of the servant." I do not believe the only special issue submitted (Issue No. 1 set out in the majority opinion), as worded, was sufficient. The jury should have been made aware of the requirement that the act had to have been "committed within the scope of the general authority of the servant" in order to hold the master liable. While I do not believe two special issues should have been submitted, as I read the requested, but refused, explanatory instruction (again, as set out in the majority opinion) it was a substantially correct statement of the law and was sufficient to call the trial court's attention to the defect.

I respectfully dissent.