Jo Ann S. TOLSON, Plaintiff,

v.

PAN AMERICAN WORLD AIRWAYS,
INC., Defendant.

Civ. A. No. 73–B–112.

United States District Court,
S. D. Texas,
Brownsville Division.

May 13, 1975.

Carlos G. Watson, Jr., Brownsville, Tex., for plaintiff.

Marshall W. Graham, Harlingen, Tex., for defendant.

DANIEL HOLCOMBE THOMAS, Senior District Judge.

The above-styled cause was heard by the Court without a jury and taken under submission on the 14th day of January, 1975. Having considered the testimony, exhibits, stipulations and arguments of counsel, the Court makes

the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This action was brought by the plaintiff, Jo Ann S. Tolson, to recover damages for an injury she sustained while boarding an airplane owned and operated by the defendant, Pan American World Airways, Inc. Plaintiff alleges that her injury was caused by the negligence of the defendant. As the incident involved an international flight, plaintiff's first asserted basis for jurisdiction in this court is the Warsaw Convention. In the alternative, plaintiff asserts jurisdiction on the grounds of diversity of citizenship existing between the parties. Plaintiff seeks both actual and punitive damages, the latter based upon alleged willful, gross and wanton negligence of the defendant's employees in their treatment of the plaintiff subsequent to her injury. The defendant asserts that the Warsaw Convention is not applicable because the plaintiff had begun her travels on the day of the accident by departing from Argentina, which nation is not a contracting party to the Convention. Furthermore, defendant denies that any negligence on its part proximately caused the plaintiff's injury and also raises the affirmative defense of contributory negligence. Immediately after the plaintiff presented her case in chief, the defendant rested without putting on any testimony. Therefore, the facts as set out hereinafter are uncontested.

2. During June and July of 1971, plaintiff accompanied her husband on a business trip from Brownsville, Texas to Buenos Aires, Argentina and then back to Brownsville. Plaintiff's itinerary included flights aboard defendant airline from Mexico City to Buenos Aires and return to Mexico City. No evidence was presented at trial to indicate whether plaintiff's tickets were purchased as a round trip flight from Mexico to Argentina and return, or as two one-way flights with one originating in Mexico and ending in Argentina and the other originating in Argentina and ending in Mexico.

3. On the morning of July 3, plaintiff and her husband boarded a flight of defendant in Buenos Aires with reservations confirmed to Panama City, Panama and with stand-by reservations through to Mexico City. When the airplane arrived in Panama City, plaintiff and her husband disembarked because their plane was not proceeding on to their hoped for destination of Mexico City and because they did not have confirmed reservations farther than Panama City. At defendant's reservation desk, plaintiff and her husband were given reservations on a flight departing immediately for Guatemala City and were assured of probable inflight confirmation of space onwards to Mexico City.

4. The departure of defendant's flight for Guatemala City was called. The passengers boarding the flight were subjected to strict precautions against highjacking. The sexes were separated and each passenger was subjected to a body search before proceeding to the aircraft. As there were fewer women passengers than men, plaintiff completed the search process and proceeded to the aircraft ahead of her husband. She was the first passenger to ascend the portable stairs being used to board the plane. As plaintiff proceeded up the stairs, a uniformed cleaning attendant with arms full of trash came out of the plane and started rapidly down the portable steps. The attendant was an employee of the defendant. There was not sufficient room for the attendant to pass. In an effort to avoid a collision with the attendant, plaintiff attempted to step backwards and downwards, lost her footing and fell down the portable stairs landing on the ground and sprained her ankle.

5. Immediately thereafter, plaintiff's husband arrived and helped her to board the aircraft. By the time plaintiff was seated, her ankle was swelling and discoloring rapidly, and she was

experiencing pain. As she had recently lost a friend who died from complications resulting from a blood clot, plaintiff became quite concerned about her condition.

6. On the plane, plaintiff was by chance seated next to a missionary doctor. According to the unobjected to testimony of the plaintiff at trial, the doctor assessed the injury to be serious and felt that the plaintiff should have immediate medical attention, including x-rays.

7. The plaintiff advised the stewardess that she was in great pain and was very worried that her injury might be dangerous. She further expressed her desire to immediately disembark in order to take advantage of the American doctors and hospital facilities located in the Canal Zone. In an effort to persuade the plaintiff to remain on board, the defendant's stewardess promised the plaintiff that arrangements would be made by radio for a "company doctor" and wheelchair to meet the plane at the next stop, Guatemala City, and that she would there be provided with whatever medical attention she might need. Plaintiff was further advised there was the possibility of arranging confirmed reservations on to Mexico City on the same plane assuming it was not necessary for medical reasons to remain in Guatemala. The plaintiff knew Mexico City well and had friends there. She was confident of good care if she could get there. The plaintiff was, however, not entirely persuaded by the promises of the stewardess. A man dressed in an airline officer's uniform came back from the cockpit and joined in the stewardess' promises and recommendations. He told the plaintiff that they would radio ahead and would have a doctor meet the aircraft at Guatemala City.

8. Relying on the representations of defendant's employees, the plaintiff agreed to remain on board the plane. She was then offered space in the first class section where she could recline.

She accepted, although her husband was refused permission to accompany her. During the flight of about one and one-half hours to Guatemala City, the plaintiff asked for, and was provided with, cold compresses for her ankle but received no other treatment. No aspirin or other medicine was given her to relieve her pain which was acute. Plaintiff continued to worry about the danger of the large blood clot which had formed on her ankle.

9. Prior to arriving in Guatemala City, the defendant's flight attendants advised plaintiff and her husband that no space onwards to Mexico City had become available and that they would have to disembark. Upon landing, plaintiff's husband carried her out of the plane. There was no doctor nor anyone else waiting to greet them, and plaintiff's husband himself had to locate a wheelchair for her. At the defendant's reservation desk, defendant's employees disavowed any knowledge of the plaintiff's accident and offered no assistance to her. Plaintiff and her husband then made their own way to a local hotel. After about an hour, plaintiff's husband was able to contact a personal family friend, who happened to be the wife of the defendant's local station manager. Through that friend, plaintiff's husband arranged for a doctor to attend her at the hotel. The doctor prescribed medicine to temporarily relieve plaintiff's pain and also to reduce any danger from the blood clot.

10. Eventually, the plaintiff and her husband returned to their home in Brownsville, where she was treated by her personal physician. She was required to stay off her ankle for approximately six weeks, and her pain and discomfort gradually decreased over that period. Approximately one year later, plaintiff experienced a flare up of her condition, and she again consulted a physician. Plaintiff sustained no permanent injury or impairment from her accident.

**338**

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter based upon diversity of citizenship between the parties to the action. 28 U.S.C. § 1332.

■ 2. The plaintiff asserted in her complaint that the Warsaw Convention was an alternate basis of jurisdiction. The Court however finds that, in accordance with the evidence as presented at trial, the provisions of the Warsaw Convention are not applicable to this action. The Convention applies by its terms "to all international transportation . . . . performed by aircraft for hire." (Article 1(1) ). Article 1(2) defines international transportation as transportation between two contracting states or, where the origin and destination are in the same contracting state, transportation with an agreed stopping place outside that state. A determination regarding the applicability of the Convention to a specific flight, i. e., whether or not it is "international transportation", is made by reference to the flight ticket of the appropriate individual passenger.[1] At trial, neither party presented sufficient evidence concerning the plaintiff's flight ticket so as to establish the plaintiff's country of "origin" and "destination" within the meaning of the Convention. Therefore, since on the morning of her accident plaintiff began her return flight to Mexico City on the defendant's airline by boarding a flight departing from Argentina, a noncontracting state, this Court will not venture to presume the applicability of the Convention. Accordingly, the Court finds that the Convention does not provide in this action a basis for jurisdiction, a cause of action for the plaintiff or a limitation of liability for the defendant.

■■ 3. Since the Warsaw Convention has been found to be inapplicable and as jurisdiction therefore rests upon diversity of citizenship, the Court must apply the Texas rules of conflict of laws. It is well settled by Texas decisions that the creation, existence and extent of tort liability is to be governed as to all substantive matters by the law of the place of injury. 12 Tex.Jur.3d Conflicts of Laws § 13.

■ 4. In keeping with the Texas rule of Lex Loci, plaintiff's cause of action should be determined by applying the substantive law of the Republic of Panama, that state being the place of injury. However, at trial plaintiff offered no proof of what that foreign law is, and the general federal rule is that the "law" of a foreign country is a fact which must be proved. *Black Diamond Steamship Corp. v. Robert Stewart & Sons*, 336 U.S. 386, 396–397, 69 S.Ct. 622, 93 L.Ed. 754 (1949). Texas procedure also requires that it be pleaded and proved. *Lamb v. Hardy*, 109 Tex. 414, 211 S.W. 445.

■ 5. The Court is therefore confronted with the question whether or not it should now apply the substantive law of Texas in the absence of proof by the plaintiff of the substantive law of the Republic of Panama. This issue is not new, and the Fifth Circuit Court of Appeals has already addressed itself in some detail to this problem. *Seguros Tepeyac, S. A., Compania Mexicana v. Bostrom*, 347 F.2d 168, at 174 n. 3 (5th Cir. 1965). When presented with such a situation, a court has essentially three possible courses; to dismiss the action, to indulge in a presumption that the foreign law is the same as that of the forum, or to simply apply the forum law as the only law before the court. This Court is of the opinion that the latter alternative is the preferable choice and that it is in keeping with the precedence of the *Seguros Tepeyac* decision just cited.

6. This approach appears even more appropriate under the circumstances of this action where at trial the defendant

---

1. Lowenfeld and Mendelsohn, *The United States and the Warsaw Convention*, 80 Harv.L.Rev. 497, 500 (1967).

objected neither to the failure of the plaintiff to prove the foreign law nor to the application of Texas law. In fact, as shown by the following excerpt from the trial transcript, the defendant agreed to the applicability of Texas law.[2] That portion of the trial reads as follows:

THE COURT: Does Texas law govern here, or whose law?

DEFENSE COUNSEL: Yes sir, it is my understanding that Texas law would be applicable, unless one of us had undertaken the burden of proving that the law of Panama would be applicable, and I am speaking aside from the Warsaw Convention, Your Honor.

7. Having now determined that Texas law is applicable, the Court finds that the plaintiff has a valid cause of action against the defendant airline. Under Texas law, a public carrier owes a high degree of care towards its passengers during the entire relationship of carrier-passenger, including necessary time spent on station premises. *Garret v. American Airlines, Inc.*, 332 F.2d 939 (5th Cir. 1964). The hurried exit of the defendant's employee down the boarding stairs without due regard for the safety of ascending passengers was negligence, and such negligence was the proximate cause of plaintiff's injury. In addition, the Court is of the opinion that plaintiff's reaction to the situation by stepping back to avoid the approaching employee did not constitute any negligence on her part.

8. As to plaintiff's claim for punitive damages, even though the defendant's subsequent actions, or lack thereof, towards the plaintiff were not such as should be condoned, they do not rise to the level of willful, gross or wanton negligence necessary for an award of punitive damages. *Ballenger v. Mobile Oil Corp.*, 488 F.2d 707 (5th Cir. 1974).

9. The Court assesses the plaintiff's actual damages, including pain and suffering, to be in the amount of Two Thousand, Five Hundred and No/100 Dollars ($2,500.00). A decree will be entered in accordance herewith.

2. It was only in a post trial brief that the defendant first argued that the plaintiff's cause of action should be dismissed because she had failed to prove the law of the Republic of Panama.