DETAR HOSPITAL, INC., et al., Appellants,

v.

Roque ESTRADA, Appellee.

No. 13–84–099–CV.

Court of Appeals of Texas, Corpus Christi.

March 14, 1985.

Rehearing Denied April 4, 1985.

Jim M. Perdue, Perdue, Turner & Berry, Houston, for appellants.

Robert P. Houston, Anderson, Smith, Null & Stofer, Victoria, for appellee.

Before UTTER, YOUNG and KENNE-DY, JJ.

## OPINION

UTTER, Justice.

This is a medical negligence case, in which the only issues presented on appeal concern damages. For purpose of this opinion, we will designate the parties as they were designated in the trial court below (plaintiff Estrada and defendant Detar Hospital, Inc.). Both parties have appealed from the trial court's judgment awarding plaintiff $827,878.00 in damages.

On January 14, 1982, plaintiff was a patient at defendant-hospital. Plaintiff was placed in an operating room at defendant-hospital to be prepared for a relatively minor, routine operation. While plaintiff was being anesthetized, a medication error was made by an employee of defendant-hospital, and plaintiff received the wrong drug, causing him to experience a myocardial infarction, which resulted in permanent damage to his heart.

Plaintiff brought suit against defendant and the anesthesiologist for his injuries. At the close of plaintiff's case at trial, defendant stipulated liability, and the jury later found the anesthesiologist not liable for plaintiff's injuries. In response to the special issues relating to damages, the jury found that plaintiff had suffered $200,000 in damages for past pain and suffering, would suffer $700,000 in damages for future pain and suffering and, additionally, had suffered $1,100,000.00 in damages for past and future lost earning capacity. Pursuant to the provisions of the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i, §§ 11.02 and 11.04 (Vernon Supp.1985), the trial court in its judgment reduced the amount awarded plaintiff by the jury to $827,878.00.

In its fifth and sixth points of error, defendant complains that the evidence was insufficient to support the jury's awards of damages for past and future pain and suffering. An analysis of defendant's arguments under these points of error reveals defendant's only argument to be that the evidence was insufficient to support the *amounts* of the awards and not the awarding of the damages itself. In its seventh through ninth points of error, defendant claims that the *amounts* of the awards are excessive.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

The record reflects that, upon receiving the improper medication, plaintiff experienced chest pains and a severe headache before he eventually lost consciousness. During the period of his recovery in the hospital, plaintiff continued to feel chest pains and have headaches. Additionally, plaintiff testified that, after leaving the operating room, he was very anxious and afraid while he remained in the hospital. Upon his return to his home and, ultimately, to his job, plaintiff continued to experience chest pains and headaches. Plaintiff also continued to experience shortness of breath, tiredness and some memory problems.

The record further reflects, that prior to plaintiff's injury, he was a healthy, active forty-one year old male. He participated frequently in athletic activities and suffered no major physical disabilities. Plaintiff's wife testified that, prior to the accident, plaintiff never worried about his health or work. She further testified that plaintiff now has problems with headaches, chest pains, worry and difficulty sleeping. The expert medical witnesses, who testified, stated that plaintiff had suffered permanent and irreparable heart damage and that he knew about the condition.

■■■■ In determining the excessiveness of a verdict, an appellate court can only exercise its sound judicial discretion and judgment. *Flanigan v. Carswell,* 324 S.W.2d 835 (Tex.1959). While no clearly enunciated standard exists for the review of such awards, it is clear that such awards are not free from all judicial supervision or control. *Collins v. Gladden,* 466 S.W.2d 629 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.). Even if, after reviewing all of the evidence, this Court would have found facts contrary to those found by the jury, we cannot substitute our judgment for that of the factfinder if those findings meet the evidentiary tests. *Alford, Meroney & Co. v. Rowe,* 619 S.W.2d 210 (Tex.Civ.App.—Amarillo 1981, writ ref'd. n.r.e.). The general rule is that, on appeal, the jury's findings on damages will not be disturbed on the grounds of excessiveness if there is any

probative evidence to sustain the award. *Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd. n.r.e.); *Wharf Cat, Inc. v. Cole,* 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd. n.r.e.); *Sunset Brick & Tile, Inc. v. Miles,* 430 S.W.2d 388 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd. n.r.e.).

■■■■ This Court will not substitute its judgment for that of the jury in the absence of a showing of passion, bias or prejudice by the jury. *Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d at 310. In the absence of an affirmative showing of passion, bias or prejudice, the reviewing court should give every intendment to the evidence supporting the verdict. *T.J. Allen Distributing Co. v. Leatherwood,* 648 S.W.2d 773 (Tex.App.—Beaumont 1983, writ ref'd. n.r.e.). The mere fact that the verdict is large is not conclusive that it is the result of passion, bias, prejudice or other considerations not found in the evidence. *Union Transports, Inc. v. Braun,* 318 S.W.2d 927 (Tex.Civ.App.—Eastland 1958, no writ). However, if, after reviewing all of the evidence, the Court finds that the award is so excessive as to shock the conscience of the Court, the award should then be held to be excessive and a remittitur should be ordered. *World Oil Co., Inc. v. Hicks,* 103 S.W.2d 962 (Tex.Comm.App.1937, opinion adopted); *Dover Corp. v. Perez,* 587 S.W.2d 761 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd. n.r.e.); *Main Bank and Trust v. York,* 498 S.W.2d 953 (Tex.Civ.App.—San Antonio 1973, writ ref'd. n.r.e.).

■■■■ Taking all of the aforementioned standards of review into consideration and after a careful review of the record, we find that the evidence is sufficient to support the jury's findings regarding damages for past and future pain and suffering. Furthermore, we do not find the amounts of the awards to be excessive. Defendant's fifth through ninth points of error are overruled.

In its first point of error, defendant complains that the evidence is insufficient to support the submission of the special issue relating to plaintiff's damages for past and future loss of earning capacity. Initially, defendant argues that, since the record clearly shows that plaintiff was earning a higher salary at the time of trial than at the time of his injury, there is no evidence of any loss of earning capacity. This argument lacks merit because a recovery for loss of earning capacity is not based on the actual earnings lost but rather on the loss of the *capacity* to earn money. *Dallas Railway & Terminal Company v. Guthrie*, 146 Tex. 585, 210 S.W.2d 550 (1948); *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943); *Armellini Express Lines of Florida, Inc. v. Ansley*, 605 S.W.2d at 312. The true measure of this type of damages is the plaintiff's diminished earning power or earning capacity in the past and/or in the future directly resulting from the injuries, which he has sustained. *Southwestern Bell Telephone Company v. Sims*, 615 S.W.2d 858 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ); *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd. n.r.e.).

Plaintiff testified that he felt that, because he had been injured, he could not perform his job as well as he had performed it prior to his injury and that he worried about keeping his job. Plaintiff further testified that he went to work on many days when he did not feel like working due to his injuries. He felt that, if he started missing work, it would affect his ability to hold his job. Plaintiff also testified that there were occasions when he had his fellow workers "cover for him" when he sat down or rested. Insofar as his earnings were concerned, plaintiff stated that, since returning to work, he had received no merit raises but only cost of living increases, which were given to all employees. Plaintiff's immediate supervisor testified that he had noticed that plaintiff was unable to exert himself physically and had problems making decisions. Plaintiff's supervisor also responded affirmatively when asked whether plaintiff's problems could affect his ability to progress with the plaintiff's employer, DuPont. Dr. Mayer, a medical doctor specializing in occupational medicine, testified that plaintiff's medical condition would place him in "a classification that would limit him in some activities." Dr. Mayer further testified that a man, who once suffered a heart attack, was more susceptible to suffer a heart attack in the future than a man who hadn't suffered a heart attack, and that the fact that a man had suffered a heart attack could play a role in the man's employability. We believe this evidence to be sufficient to support the submission of the special issue concerning plaintiff's past and future loss of earning capacity. Defendant's first point of error is overruled.

In its second and third points of error, defendant challenges the sufficiency of the evidence to support the jury's finding regarding the *amount* of damages for past and future lost earning capacity. In its fourth point of error, defendant claims that such an award of damages for past and future lost earning capacity is excessive.

In *Armellini Express Lines of Florida, Inc. v. Ansley,* our Court wrote:

Recovery for loss of earning capacity as a measure of damages in a personal injury suit is not recovery of actual earnings but, rather, recovery for the loss of the capacity to earn money. See *McIver v. Gloria* [140 Tex. 566] 169 S.W.2d 710, 713 (Tex.Sup.1943); *City of Houston v. Holden*, 336 S.W.2d 193 (Tex.Civ.App.—Eastland 1960, writ ref'd. n.r.e.). A plaintiff who seeks damages for impairment or loss of earning capacity must introduce into evidence some monetary measure of earning capacity or have some reason for failing to do so. The amount of damages resulting from the impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury. The jury, on the other hand, should not be left to mere conjecture where facts appear to be available upon which the jury

could base an intelligent answer. *Bonney v. San Antonio Transit Company*, 325 S.W.2d 117, 120 (Tex.Sup.1959).

The amount which the plaintiff might have earned in the future is always uncertain and must be left largely to the sound judgment and discretion of the jury. Therefore, no general rule can be laid down except that each case must be judged upon its particular facts and the damages proved with the degree of certainty of which the case is susceptible. *McIver v. Gloria*, 169 S.W.2d 710, 712 (Tex.Sup.1943).

*Armellini Express Lines of Florida, Inc. v. Ansley*, 605 S.W.2d at 312–313.

▇▇▇ However, while this type of damage is not susceptible to exact proof as other types of damages, the amount of the damage award for lost earning capacity still must have some basis in the evidence. We do not find this type of damages to be subject to the speculative nature of exemplary damages; we are dealing here with a compensatory form of damage, which is ostensibly designed to compensate an injured party for some real injury.

Again turning to the record in this case, we find that plaintiff was a seventeen year employee of DuPont who had progressed through the company to the position of mechanical foreman with an annual salary of approximately $40,000. While plaintiff testified that he was concerned about his job, plaintiff also testified that generally he could do his work and that he was comfortable with the job. He further testified that no one working for his employer had suggested to him that his job was jeopardized because he had been injured. The record contains no testimony concerning what promotions or pay raises plaintiff could have reasonably anticipated in his continued employment with DuPont.

▇▇▇ Based on this evidence of detriment to·plaintiff's earning capacity, the jury awarded plaintiff $1,100,000.00 in damages for loss of past and future earning capacity. Although we acknowledge that the evidence shows that plaintiff has suffered some loss of earning capacity, we find no basis in the evidence to support this *amount* of damages awarded for lost earning capacity in the record, and we hold that the *amount* of the award is clearly excessive so as to shock the conscience of this Court. Were there any evidence in the record other than plaintiff's unarticulated fears that he would lose his job, his supervisor's testimony that plaintiff's ability to progress might be affected and Dr. Mayer's testimony that plaintiff's heart attack condition could play a role in his future employment, the amount of the damage award might have a more substantial evidentiary basis. However, we are faced here with a plaintiff, who, by his own admission, is capable of continuing to perform his job and whose job is not apparently threatened by his current health conditions. We believe, that under the factual situation presented, the amount of damages awarded by the jury for plaintiff's loss of earning capacity in the past and in the future was excessive. Defendant's second through fourth points of error are sustained.

▇▇▇ Since we have acknowledged that plaintiff has suffered some loss of earning capacity, we are now faced with the question of how much of the jury verdict to find excessive. Defendant suggests in its brief that $100,000.00 would be adequate compensation for such loss of earning capacity. We do not agree that such amount in this day-and-age would be adequate compensation for such loss. Plaintiff's employer has not guaranteed that·plaintiff will have his job in the future, and a blue collar employee with a known heart condition is not a prime candidate for employment by subsequent potential employers. The award of compensatory damages for loss of earning capacity is somewhat akin to damages awarded for pain and suffering. Even though neither type of damages (loss of earning capacity and pain and suffering) are capable of being exactly and accurately determined, there must be some rational basis for the amount awarded. In *Sharpe v. Munoz*, 256 S.W.2d 890 (Tex.Civ.App.—

San Antonio 1953, writ ref'd. n.r.e.), Chief Justice Pope stated:

"There is hardly a hitching post to which jurors may tie in evaluating pain in terms of money, yet, they may not roam too far."

*Sharpe v. Munoz,* 256 S.W.2d at 893. Pursuant to TEX.R.CIV.P. 440, we order that a remittitur of $500,000 be entered in this case.

■ In three cross-points of error, plaintiff attacks the constitutionality of TEX.REV.CIV.STAT.ANN. art. 4590i §§ 11.01–11.05 (Vernon Supp.1985). Essentially, these provisions of Art. 4590i are those, which limit the amount of damages a plaintiff may recover in a medical liability action. Initially, we recognize that, in passing upon the constitutionality of a statute, we are confronted with the presumption of validity of the statute. We must presume that the legislature has not acted unreasonably or arbitrarily; and, a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis to strike down legislation as being arbitrary or unreasonable. *Smith v. Davis,* 426 S.W.2d 827 (Tex.1968).

Plaintiff asserts that Art. 4590i §§ 11.01–11.05 violates the equal protection clauses of both the federal and state constitutions. *See* U.S. CONST. amend. XIV and TEX. CONST. art. 1 § 3.

■ Generally, the courts must evaluate legislative classifications, which allegedly violate equal protection rights, by applying a two-tier analysis. If the classification involves a fundamental right or a suspect class, the State bears a heavy burden to justify the classification. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In other areas, such as the right to recover in tort, a restrained standard of review is applied. This standard is usually referred to as the "rational basis" test. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■ Frequently, when considering the constitutionality of statutes imposing disabilities on certain classifications of tort victims, the courts have relied on the presence or absence of a societal quid pro quo to the disadvantaged class as a factor in their determination. *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980); *Arneson v. Olson,* 270 N.W.2d 125 (N.D.1978); *Simon v. Saint Elizabeth Medical Center,* 355 N.E.2d 903 (Ohio App.1976); *Wright v. Central DuPage Hospital Association,* 63 Ill.2d 313, 347 N.E.2d 736 (1976). In such cases, the question for the court's determination becomes whether or not the litigant's right of redress is in some manner outweighed by the legislative basis for the statute imposing disabilities. In making such a determination, the courts should consider both the general purpose of the statute and the extent to which the litigant's right to redress is affected. *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983).

■ As early as 1932, the Texas Supreme Court recognized that the Texas Constitution insures that Texas citizens bringing common law causes of action will not unreasonably be denied access to the courts. *Hanks v. City of Port Arthur,* 48 S.W.2d 944 (Tex.1932). The right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally guaranteed right of redress.

TEX.REV.CIV.STAT.ANN. art. 4590i § 1.02(b) (Vernon Supp.1985) sets forth the following stated purposes of the statute:

(b) Because of the conditions stated in Subsection (a) of this section, it is the purpose of this Act to improve and modify the system by which health care liability claims are determined in order to:

(1) reduce excessive frequency and severity of health care liability claims through reasonable improvements and modification in the Texas insurance, tort, and medical practice systems;

(2) decrease the cost of those claims and assure that awards are rationally related to actual damages;

(3) do so in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis;

(4) make available to physicians, hospitals, and other health care providers protection against potential liability through the insurance mechanism at reasonably affordable rates;

(5) make affordable medical and health care more accessible and available to the citizens of Texas;

(6) make certain modifications in the medical, insurance, and legal systems in order to determine whether or not there will be an effect on rates charged by insurers for medical professional liability insurance; and

(7) make certain modifications to the liability laws as they relate to health care liability claims only and with an intention of the legislature to not extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law.

In light of the above stated purposes of the statute, the question for our determination then is whether or not these purposes justify the restriction on a plaintiff's constitutionally guaranteed right to obtain full redress for injuries caused by another's wrongful conduct. Rhetorically speaking, does the limitation of recovery of seriously injured victims of medical negligence promote these aims? "Certainly, the limitation of recovery does not provide adequate compensation to patients with meritorious claims; on the contrary, it does just the opposite for the most seriously injured claimants. It does nothing toward the elimination of non-meritorious claims. Restrictions on recovery may encourage physicians to enter into practice and to remain in practice, but do so only at the expense of claimants with meritorious claims." *Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978).

We do not believe that, as significantly demonstrated by the spiraling increases in the costs of medical care since the enactment of the statute, there has been a showing of sufficient societal quid pro quo (i.e., the loss of recovery potential to some malpractice victims as offset by lower insurance premiums and lower medical care costs for other recipients of medical care) to justify the limitation on liability imposed by the statute, as applied to seriously injured medical negligence victims, such as plaintiff.

The wide-sweeping, absolute limitation on liability found in Art. 4590i is an unreasonable infringement on a plaintiff's constitutionally guaranteed right to obtaining full redress for injuries caused by another's wrongful conduct. Therefore, we hold that those provisions of Art. 4590i, which purport to place such a limitation on the amount of damages a plaintiff may recover in a medical liability action, are unconstitutional. Plaintiff's three crosspoints of error are sustained.

The trial court's judgment limiting plaintiff's damages to $827,878.00 is REVERSED. We RENDER judgment awarding plaintiff $200,000.00 for past pain and suffering and $700,000.00 for future pain and suffering. We order a remittitur of $500,000.00 thereby reducing the jury's award of $1,100,000.00 for plaintiff's past and future loss of earning capacity to $600,000.00. If the remittitur is filed within thirty (30) days after the date of the judgment of this Court, then judgment is RENDERED awarding plaintiff $600,-000.00 for past and future loss of earning capacity. If no remittitur is filed within thirty (30) days after the date of the judgment of this Court, then, since liability was uncontested (See TEX.R.CIV.P. 434), we SEVER the portion of the trial court's judgment awarding damages for plaintiff's past and future loss of earning capacity and REMAND said portion to the trial court for retrial on the issue of plaintiff's past and future loss of earning capacity.

YOUNG, J., not participating.

### SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellee Roque Estrada remit the sum of $500,-

000.00 out of the amount awarded to him as set forth in the original opinion. The appellee has filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the appellee so that the amount of judgment against the appellants is the sum of $1,500,000.00.

The judgment of the trial court as herein reformed is hereby REVERSED and RENDERED.