

# THE ATTORNEY GENERAL
# OF TEXAS

January 26, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Neal E. Birmingham      Opinion No. JM-626
District Attorney
P. O. Box 940                     Re:  Interpretation and constitu-
Linden, Texas    75563            tionality of Indigent Health Care
                                  and Treatment Act, article 4438f,
                                  V.T.C.S.

Dear Mr. Birmingham:

You inquire whether certain hospitals are public hospitals within the meaning of the Indigent Health Care and Treatment Act [hereinafter the act], article 4438f, V.T.C.S., and whether certain cities are responsible for indigent health care provided by those hospitals. You also ask questions concerning the constitutionality of the act. It is our opinion that the hospitals in question are "public hospitals" and that each of the cities must provide sufficient funding to its public hospital or hospital authority to provide the health care assistance required by the act. We further conclude that the constitutional issues that you raise do not render the act unconstitutional.

In the cities about which you inquire, the governing body of each city passed an ordinance creating a city hospital authority as authorized by the Hospital Authority Act, codified as article 4437e, V.T.C.S. Such a hospital authority has no taxing power and is governed by a board of directors, which may issue revenue bonds to provide funds for its purpose, may purchase, construct, and equip hospitals, may enter into a management contract with any person, and may sell, lease, or close a hospital. V.T.C.S. art. 4437e, §§4, 5; art. 4437e-1. Unless the hospital is being leased, it shall be operated by the hospital authority for the use and benefit of the public. Art. 4437e, §14.

Under the facts presented to us, it appears that the hospitals were acquired by and are governed and operated by the hospital authorities' boards of directors. Section 1.02(10) of the Indigent Health Care Act expressly defines a public hospital as "a hospital owned, operated, or leased by a governmental entity." According to section 1.02(6), a governmental entity "includes a county, city, town, hospital authority, or other political subdivision of the state, but does not include a hospital district." The dominant consideration in construing a statute is its legislative intent. Minton v. Frank, 545 S.W.2d 442, 445 (Tex. 1976). The words of the statute are the best evidence of legislative intent, and, when a statute is plain and

p. 2823

unambiguous, it will be enforced according to its words. Anderson v. Penix, 161 S.W.2d 455, 459 (Tex. 1942); Sabine Pilots Assn. v. Lykes Brothers Steamship, Inc., 346 S.W.2d 166, 169 (Tex. Civ. App. - Austin 1961, no writ). In our opinion, the language in section 1.02(6) and section 1.02(10) is clear and unambiguous.

Since the hospitals in question appear to be owned and operated by a hospital authority, we conclude that they are public hospitals within the meaning of the Indigent Health Care Act. Each hospital owned and operated by a city hospital authority is to be operated for the use and benefit of the public and shall serve the area of the city. As a public hospital, it shall provide health care assistance to eligible residents of the city. Since the city created the hospital authority, the city shall provide sufficient funding to the public hospital or to the hospital authority to provide the health care assistance required by the Indigent Health Care Act. See V.T.C.S. art. 4438f, §§10.02, 12.03.

You ask whether the provisions of section 12.03 of the Indigent Health Care Act are unconstitutional under article VIII, section 1, of the Texas Constitution. You suggest that section 12.03 provides for double taxation of some county taxpayers and an unequal tax that will be imposed on county taxpayers, some of which will be taxed by only the county and some of which will be taxed by both the county and the city, depending on the location of their residences. We conclude that section 12.03 does not result in double taxation.

Article VIII, section 1, of the Texas Constitution, which states that "[t]axation shall be equal and uniform," calls for equal and uniform taxes within taxing jurisdictions. In City of Pelly v. Harris County Water Control and Improvement District, 198 S.W.2d 450, 454 (Tex. 1946), the Texas Supreme Court pointed out that a city and a special district are separate entities created under separate provisions of the constitution, each of which has been delegated the power to assess and collect taxes for the purpose of accomplishing the functions for which each is organized. The court held that the fact that part of the property in the territorial limits of one entity is also included in the other entity does not subject the property to double taxation nor contravene the constitutional rule that taxes must be equal and uniform. See also Moore v. Edna Hospital District, 449 S.W.2d 508 (Tex. Civ. App. - Corpus Christi 1969, writ ref'd n.r.e.) (in county with hospital district encompassing part of the county, the county can tax on a county-wide basis to support its county hospital, which does not constitute double taxation); Kuhlmann v. Drainage District No. 12 of Harris County, 51 S.W.2d 784 (Tex. Civ. App. - Galveston 1932, writ ref'd) (taxes by city for city purposes, including drainage, and taxes by drainage district on same property is not double taxation nor violation of provision that taxation be equal and uniform).

You also express concern that sections 4.03, 5.02, and 12.03 of article 4438f may be discriminatory and invalid because certain provisions apply only to counties and not to cities. Your concern appears to be that the Indigent Health Care and Treatment Act is a denial of equal protection to the residents and taxpayers of a city under either article I, section 3, of the Texas Constitution or the Fourteenth Amendment to the United States Constitution. Equal protection is a right extended to persons rather than to governmental entities.

Section 4.03 provides that:

> (a) County liability for health care services provided by all providers of assistance, including hospitals and skilled nursing facilities, to an eligible resident of that county who does not reside within the area that a public hospital or hospital district has a legal obligation to serve is limited to a maximum total payment of $30,000 for all services provided to that resident during the county's fiscal year.

> (b) If a county provides hospital or skilled nursing facility services to an eligible resident of that county who does not reside within the area that a public hospital or hospital district has a legal obligation to serve, the county's liability is limited to payment for a total of 30 days of hospitalization, or treatment in a skilled nursing facility, or both, during the county's fiscal year or a maximum total payment of $30,000 for all services provided to that eligible resident during that fiscal year, whichever occurs first. (Emphasis added).

Section 5.02 provides, in part, that:

> (a) The department may distribute funds as provided by this subtitle to eligible counties to assist the counties in providing mandatory health care services to eligible residents of that county who do not reside within the area that a public hospital or hospital district has a legal obligation to serve.

> (b) Except as provided by Subsection (c) of this section, to be eligible for state assistance, a county must:

> (1) expend in a fiscal year at least 10 percent of the county general revenue levy for that

> year to provide mandatory health care services to eligible residents of that county who do not reside within the area that a public hospital or hospital district has a legal obligation to serve and who qualify for assistance under Section 5.01 of this Act. . . .
>
> . . . .
>
> (g) State funds shall be equal to 80 percent of the actual payment for health care services for eligible residents of that county who do not reside within the area that a public hospital or hospital district has a legal obligation to serve during the remainder of the year after the 10 percent expenditure level has been reached.
>
> (h) If the department fails to provide assistance to an eligible county as prescribed by Subsections (f) and (g) of this section, the county is not liable for payments for health care services provided to eligible residents after the county reaches the 10 percent expenditure level. (Emphasis added).

Section 12.03 provides that:

> Each governmental entity that owns, operates, or leases a public hospital shall provide sufficient funding to the hospital to provide the health care assistance required by this Act. If a public hospital is owned, operated, or leased by a hospital authority, the governmental entity that created or authorized the creation of the authority shall provide sufficient funding to the public hospital or hospital authority to provide the health care assistance required by this Act. (Emphasis added).

The right to equal protection prohibits a legislature only from treating differently persons who are "similarly situated." See Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886). There are many differences in the powers and duties of a county and a city. For instance, they have different tax and revenue raising powers. See V.T.C.S. art. 1066c (authorizing only a city to adopt by election a local sales and use tax for the benefit of the city). It is our opinion that residents and taxpayers of a county and a city are not "similarly situated."

Also, the provisions of sections 4.03 and 5.02 of article 4438f limiting the liability of a county and authorizing state assistance to

a county under certain circumstances are part of Title 2 of the act, which establishes the responsibility of counties for persons who do not reside in an area served by a public hospital or hospital district. Each county must provide health care assistance as provided by that title to each eligible resident of that county who does not reside in an area served by a public hospital or hospital district. V.T.C.S. art. 4438f, §2.02. A city has no obligation under Title 2. It may have an obligation only under Title 3. Section 12.03 of Title 3 applies to each governmental entity that owns, operates, or leases a public hospital and applies equally to counties and cities. The circumstances under which a county has limited liability and receives state assistance under Title 2 differ from the circumstances under which both cities and counties may be required to provide funding to a hospital to provide health care assistance under Title 3.

We pointed out in Attorney General Opinion JM-552 (1986) that the Indigent Health Care Act is the legislature's implementation of recommendations made by the Task Force on Indigent Health Care appointed in 1983. The Task Force Final Report anticipated that, in some instances, counties would provide services under Title 2 through contracts with public or private providers or other counties or through the purchase of insurance for county residents. The Task Force noted potential difficulties facing a county in providing care for its indigent, including, among other things, the potential liability of a county for catastrophic illness and health care costs that may exceed the counties' ability to pay because of widespread poverty and a limited property tax base that will not raise sufficient ad valorem taxes. See Task Force on Indigent Health Care, Final Report, December 1984, at 13, 22.

Moreover, a state may apply different laws, or its law differently, to reasonable classes of persons without violating the equal protection clause of the Fourteenth Amendment. See Railroad Commission of Texas v. Miller, 434 S.W.2d 670, 673 (Tex. 1968).

The courts have applied the federal standard in considering both the state and federal constitutional provisions. Spring Branch Independent School District v. Stamos, 695 S.W.2d 556, 560 (Tex. 1985); Detar Hospital, Inc. v. Estrada, 694 S.W.2d 359, 365 (Tex. App. - Corpus Christi 1985, no writ). Basically, the courts have adhered to a two tier analysis. See Clements v. Fashing, 457 U.S. 957, 963 (1982). See also Detar Hospital, Inc. v. Estrada, 694 S.W.2d at 365. If a statute infringes on a fundamental right or creates a suspect classification, the statute is subject to strict judicial scrutiny which requires the state to establish a compelling interest in its enactment. See In re Griffiths, 413 U.S. 717 (1973). If a statute does not interfere with the exercise of fundamental rights protected by the constitution or operate to the disadvantage of suspect classes, the statute is accorded a presumption of constitutionality that is not disturbed unless the person challenging a classification establishes that the classification does not rationally further a legitimate state

purpose or interest.  See San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973); McGowan v. Maryland, 366 U.S. 420 (1961); University Interscholastic League v. North Dallas Chamber of Commerce Soccer Association, 693 S.W.2d 513, 517 (Tex. App. - Dallas 1985, no writ).  In addition to the two tiers, the court in certain instances has inquired whether legislation furthers the "substantial interest" of the state.  See Plyler v. Doe, 457 U.S. 202 (1982).

We are of the opinion that the provisions in question do not involve a fundamental right guaranteed by the constitution or a suspect class and would be judged by a court under the rational basis test.  The United States Supreme Court used the rational basis test to uphold differences in levels of expenditures in Texas school districts.  In doing so, the court restated its reluctance to interfere with the states' fiscal policies under the equal protection clause as follows:

> The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. . . .  It has . . . been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification.  Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. . . .  (Citation omitted).

San Antonio Independent School District v. Rodriguez, 411 U.S. at 40.

We cannot presume that the legislature acted unreasonably or arbitrarily (1) in limiting the liability of the counties who bear the sole responsibility for providing health care assistance to their eligible residents who do not reside in an area served by a public hospital or hospital district or (2) in providing state assistance to counties that must expend at least 10 percent of the county's general revenue levy for the year to provide the mandatory health care service.

It has been suggested that the legislature cannot constitutionally empower a private, for-profit corporation which operates a hospital as lessee to make quasi-judicial and legislative decisions that a "public hospital" is empowered to make under Title 3 of the act.  It also has been suggested that the legislature may not constitutionally require a county or city to provide "funding" for a private or for-profit corporation.  For instance, sections 10.02(a) and 12.03 of article 4438f require a governmental entity that owns a hospital which is operated by a private, for-profit corporation to

provide sufficient funding to allow the hospital to provide the required health care assistance. The questions require a statutory interpretation of the act.

The dominant consideration in construing a statute is its legislative intent. Minton v. Frank, 545 S.W.2d 442, 445 (Tex. 1976). Section 2.02 provides that, for residents of areas not served by a public hospital or hospital district, the county as payor of last resort shall provide the health care assistance prescribed by Title 2. On the other hand, section 10.02(a) provides that each public hospital shall provide the health care assistance prescribed by Title 3 and further requires each governmental entity that owns a hospital which may be operated by another entity to provide sufficient funding to allow the hospital to provide the required health care assistance. We conclude that the language of the statute states the intention of the legislature that a county or a city that owns a public hospital must provide sufficient financial support to permit a hospital operated by a corporation or other entity to meet the hospital's obligation for indigent care.

It is our opinion that the term "public hospital" as used in section 10.02(a) includes both the owner and operator of such a hospital and does not mean only the operator of the hospital or only the owner of the hospital. The Task Force on Indigent Health Care recommended to the legislature that implementation of the act be a matter for local determination in order to meet the different needs of various areas of the state. See Task Force on Indigent Health Care, Final Report, December 1984, at 21. Decisions necessary to comply with the act are an internal matter to be resolved by the entities that constitute the public hospital. If the legislature intended the governmental entity that owns a hospital to merely pay the operator for services rendered to indigents, the legislature easily could have so stated as it did in section 2.02 when it stated that "each county shall provide health care assistance as prescribed." Art. 4438f, §2.02. Instead, the legislature directed a governmental entity that owns a public hospital to "provide sufficient funding to allow the hospital to provide the required health care assistance." We conclude that, where a hospital is owned by one entity and operated by another, the legislature intends "sufficient funding" to be a matter to be negotiated between the entities and to be the decision of both, with the operator of the hospital presenting information necessary for the decision. It is our opinion that the act does not strip the governmental entity of control and does not constitute an unconstitutional delegation of power.

Section 10.02(f) of article 4438f authorizes a public hospital to adopt an income and resources standard for the purpose of eligibility that is less restrictive than the basic standard mandated by that section. It has been suggested that such authority may be unconstitutional if exercised by a private corporation operating a hospital that is owned by a governmental entity. We believe that section 10.02(f)

is intended to clarify the fact that a hospital is not bound by the basic standard specified by the act. However, the adoption of a less restrictive standard by a corporation operating a hospital does not change the responsibility of a governmental entity. A governmental entity that owns a public hospital shall provide sufficient funding to allow the hospital to provide the _required_ health care assistance. A less restrictive standard is not required by the act.

Article III, section 51, of the Texas Constitution, provides that "[t]he legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations." Both the courts and this office have approved statutes that authorize grants of public funds to private entities so long as the expenditure is made for the direct accomplishment of a legitimate public purpose. See Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960); see also State v. City of Austin, 331 S.W.2d 737 (Tex. 1960); Davis v. City of Lubbock, 326 S.W.2d 699 (Tex. 1959); Attorney General Opinions MW-89 (1979); H-1260 (1978). Also, the public entity must receive adequate consideration to avoid making a gift or grant of public funds to a private entity in violation of article III, section 51. See Attorney General Opinions H-1309 (1978); H-403 (1974). When a governmental entity accomplishes a public purpose by granting funds to a private entity, it must maintain control over the use of the funds to see that the public purpose is achieved. See Attorney General Opinions MW-423 (1982); MW-373 (1981). It is our opinion that a court would find that health care assistance for the indigent serves a public purpose and a governmental entity is not precluded from maintaining control over the use of the funds to insure adequate consideration and the achievement of the public purpose. Hence, we conclude that the act does not on its face violate article III, section 51, of the Texas Constitution.

## S U M M A R Y

Under the Indigent Health Care and Treatment Act, article 4438f, V.T.C.S., a hospital owned or operated by a hospital authority created by a city is a public hospital, and the city shall provide sufficient funding to the public hospital or to the hospital authority to provide the health care assistance required by the act.

The act does not provide double taxation of county taxpayers or an unequal tax in violation of article VIII, section 1, of the Texas Constitution. The provisions in Title 2 of the act limiting liability of a county and authorizing state assistance to a county under certain circumstances are not a denial of equal protection to the residents and taxpayers of a city under article I, section 3, of the Texas Constitution or

the Fourteenth Amendment to the United States Constitution. The act does not unconstitutionally delegate authority when a public hospital is owned by one entity and operated by another entity. The act is not unconstitutional as a grant of public funds to a private entity in violation of article III, section 51, of the Texas Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General