

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 29, 1996

The Honorable Clyde Alexander
Chair, Committee on Transportation
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-403

Re: Whether V.T.C.S. article 9030, section 2, which limits the liability of an excursion train operator to $5,000,000 per occurrence, violates Texas Constitution article I, section 13 (RQ-878)

Dear Representative Alexander:

Article 9030, section 2, V.T.C.S., limits the liability of an excursion train operator to $5 million per occurrence. Article I, section 13 of the Texas Constitution prohibits the legislature from taking an injured person's right to a legal remedy. We consider whether V.T.C.S. article 9030, section 2 contravenes article I, section 13 of the constitution. Although we are unable to definitively answer your question, we believe a court probably would conclude that V.T.C.S. article 9030, section 2 is unconstitutional.

The legislature enacted the whole of article 9030 in 1995.[1] Under the article, the comptroller may certify the owner of a passenger train as the operator of an excursion train if the train is used primarily for tourism or public service and promotes the state's tourist industry.[2] In addition, to be certified, the passenger train owner must be insured against liability resulting from injury to persons or property damage in the amount of at least $5,000,000.[3] Any person who is certified is, according to section 2(a), "not liable for injury or damages over $5,000,000 resulting from a single occurrence." Moreover, this limitation of liability extends to the operator of the excursion train, the owner of equipment the train uses, the owner of the track the train uses (which you call the "trackage"), and the host carrier.[4] The statute does not limit liability, however, if the injury or damages arise from "intentional, malicious, or grossly negligent conduct."[5]

---

[1] *See* Act of May 27, 1995, 74th Leg., R.S., ch. 910, 1995 Tex. Sess. Law Serv. 4448, 4448-49.

[2] V.T.C.S. art. 9030, § 1(a).

[3] *Id.* § 1(b).

[4] *Id.* § 2(b). An excursion train operator must notify passengers of the limitation on liability in two ways. First, the operator must print, on each passenger's ticket, in 12-point boldface type: "THE OPERATOR OF THIS TRAIN IS NOT LIABLE FOR PERSONAL INJURY OR WRONGFUL DEATH

In enacting article 9030, the legislature apparently was motivated by a desire to make excursion train tickets affordable and thereby provide economic benefit to the communities at which the trains stop.[6]  Prior to 1995, excursion train operators were governed, with reference to the amount of liability insurance they must carry, by the rules of the commercial train operators that own the trackage.[7]  Thus, if a commercial train operator required an excursion train operating on its trackage to carry liability insurance in the amount of $25 million, the excursion train would have to comply.[8]  The legislature believed this requirement reduced the chances that an excursion train operation would be viable and consequently reduced the economic benefit towns at which the train stops would receive:

> [This requirement that excursion train operators must carry liability insurance in the amount of $25 million] places a hardship on excursion train operators because they are operating for the sole purpose of transporting tourists on scenic routes, and their traveling speed does not exceed 40 m.p.h. at any given time.  [It] makes it necessary for excursion train operators to increase the ticket prices for their trips to an excessive amount in an attempt to recover the cost of the liability insurance.  The excessive amount of the tickets greatly reduces the demand for the trips offered by the excursion train operators, and is detrimental to the economic benefit provided by the passengers to the small towns where the train stops along the route.[9]

---

(footnote continued)
IN AN AMOUNT IN EXCESS OF $5,000,000." *Id.* § 4(1).  Second, the operator must print an identical disclaimer, in letters at least two inches high, and post it near a passenger boarding area. *Id.* § 4(2).

[5]*Id.* § 2(c).  Article 9030, section 2(a), V.T.C.S., does not limit an excursion train operator's liability if, at the time of the injury or damages, the operator failed to maintain liability insurance in the requisite amount or if the operator carried freight (other than personal luggage), commuters, or passengers traveling solely for business or commercial reasons. *See also id.* § 5.

[6]*See* House Transp. Comm., Bill Analysis, H.B. 1208, 74th Leg. (1995).

[7]*Id.*

[8]*Id.*  House Bill 1208's bill analysis states that federal law requires a commercial train operator to maintain liability insurance in the amount of $25 million per occurrence. *Id.*  We were unable to find that federal law, however.  If the law exists, it preempts state law to the extent of any conflict. *See* Attorney General Opinion DM-154 (1992) at 4 (stating that, under United States Constitution article VI, clause 2, state law that conflicts with federal law is pre-empted) (citing *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990)).

[9]House Transp. Comm., Bill Analysis, H.B. 1208, 74th Leg. (1995).

You indicate that, despite the new statutory limitation on liability, a commercial train operator, Union Pacific Rail Corporation, requires excursion train operators that use its trackage to carry liability insurance in a minimum amount of $25 million per occurrence. Union Pacific, you state, believes that the new law is unconstitutional. You therefore ask about the constitutionality of V.T.C.S. article 9030, section 2(a) and (b). You do not indicate which constitutional provision or provisions you are concerned about. We believe, however, that article I, section 13 of the Texas Constitution is the relevant provision.

Article I, section 13 of the Texas Constitution mandates that all courts be open and that every person whose real or personal property, body, or reputation is injured have a remedy by due course of law.[10] Article I, section 13 guarantees not only access to the courts, but *meaningful* access.[11] As one court has said, article I, section 13 guarantees a plaintiff the right "to obtain full redress for injuries caused by another's wrongful conduct."[12] The Texas Supreme Court has interpreted this "open courts" provision to forbid the legislature to deny a citizen the right to seek through the courts a remedy for an intentional injury.[13] In addition, the court has applied the open courts provision in cases involving negligent injury.[14]

In our opinion, the Texas Supreme Court's decision in *Lucas v. United States*[15] controls how we must analyze your question. In that case, the court addressed the constitutionality of the statutory limitation on damages a plaintiff can receive in a medical-malpractice action.[16] Specifically, V.T.C.S. article 4590*i*, section 11.02(a) limits a physician's or health-care provider's civil liability in a medical malpractice action to $500,000.[17] This limitation does not apply to medical, hospital, and custodial-care expenses, how-

---

[10]*See generally* 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 47, 50-51 (1977).

[11]*Lucas v. United States*, 757 S.W.2d 687, 690 (Tex. 1988) (emphasis added).

[12]*Detar Hosp., Inc. v. Estrada*, 694 S.W.2d 359, 366 (Tex. App.--Corpus Christi 1985, no writ).

[13]*Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 561 (Tex. 1916). *See generally* Joseph P. Witherspoon, *Constitutionality of the Texas Statute Limiting Liability for Medical Malpractice*, 10 TEX. TECH. L. REV. 419, 424-26 (1979).

[14]*See Lucas*, 757 S.W.2d at 688, 690; *Sax v. Votteler*, 648 S.W.2d 661, 664, 665 (Tex. 1983); *see also Detar Hosp., Inc.*, 694 S.W.2d at 361, 365-66.

[15]757 S.W.2d 687 (Tex. 1988).

[16]*Id.* at 687.

[17]*Id.* at 688-89 (quoting V.T.C.S. art. 4590*i*, § 11.02(b)).

ever.[18] In the event section 11.02(a) is found unconstitutional, section 11.03 provides an alternative limitation on damages: a physician or health-care provider's civil liability in a medical malpractice action is limited to $150,000 for all past and future noneconomic losses.[19]

The *Lucas* court analyzed the constitutionality of sections 11.02 and 11.03 using a two-pronged approach.[20] First, to find a statute unconstitutional under article I, section 13 of the Texas Constitution, a court must find that the statute restricts a "cognizable common[-]law cause of action."[21] Second, the court must find that, when balanced against the purpose and basis of the statute, the statute unreasonably or arbitrarily restricts the right to redress.[22]

The court found that a victim of medical negligence has an undisputed, well-defined common-law right of action.[23] The court therefore proceeded to consider whether, given the purpose of the statute, the statutory limit on damages unreasonably or arbitrarily restricts that right.[24] The legislature articulated the purposes of V.T.C.S. article 4590*i* in section 1.02, and they are, primarily, to reduce the frequency and severity of health-care liability claims, to decrease the costs of these claims and ensure that awards are rationally related to actual damages, and to make available to health-care providers liability insurance at "reasonably affordable rates." The court found that the legislature did not intend to strike only at frivolous medical malpractice lawsuits, but at all medical malpractice lawsuits.[25] The court further found that legislature itself was unsure whether the limitation on damages would lower liability insurance rates.[26]

The stated purposes, the court concluded, did not support the restriction on redress.[27] Significantly, the legislature failed to provide an adequate substitute through

---

[18]*Id.* at 689 (quoting V.T.C.S. art. 4590*i*, § 11.02(b)).

[19]*Id.* (quoting V.T.C.S. art. 4590*i*, § 11.03).

[20]*See id.* at 690 (quoting *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983)).

[21]*Id.* (quoting *Sax*, 648 S.W.2d at 666).

[22]*Id.* (quoting *Sax*, 648 S.W.2d at 666).

[23]*Id.*

[24]*Id.* at 690-92

[25]*Id.* at 691.

[26]*Id.* (quoting V.T.C.S. art. 4590*i*, § 1.02(a)(12)).

[27]*See id.*

which a medical-malpractice plaintiff may obtain redress for his or her injuries.[28]  As an example of an adequate substitute, the court pointed to similar statutes in two other states in which the legislature limited a health-care provider's liability but also established a patient-compensation fund.[29]  Presumably, a medical-malpractice plaintiff who is not fully compensated for his or her injuries by the physician or health-care provider may seek additional recompense from this fund.  The court noted that alleged benefits to society generally are insufficient to uphold a statute against attack under Texas Constitution article I, section 13.[30]

In addition, the court found that the legislature unreasonably limited the recovery available to persons who were catastrophically injured by medical malpractice because the legislature desired to conduct a "speculative experiment" to determine whether medical-malpractice liability insurance rates would decrease.[31]  Furthermore, the legislature's stated purpose to ensure that awards are rationally related to actual damages intruded upon the province of the courts.[32]  In any event, the court concluded, the legislature unreasonably and arbitrarily determined "that arbitrary damages caps, applicable to all claimants no matter how seriously injured," assured "a rational relationship between actual damages and amounts awarded."[33]

We consider now V.T.C.S. article 9030, section 2(a), the statute you cite.  Using the two-pronged analysis set forth in *Lucas*, we must decide first whether article 9030, section 2(a) restricts a cognizable common-law cause of action.  Second, we must analyze whether the statute unreasonably or arbitrarily restricts the cause of action given the purpose and basis of the statute.

We find a well-established, cognizable, common-law cause of action for victims of common-carrier negligence.[34]  The issue thus becomes whether article 9030, section 2(a)

---

[28]*Id.* at 690.

[29]*Id.* at 691.

[30]*Id.* at 690 (citing *Wright v. Central Du Page Hosp. Ass'n*, 347 N.E.2d 736, 742 (Ill. 1976)).

[31]*Id.* at 691.

[32]*Id.*

[33]*Id.*

[34]*See Tolson v. PanAmerican World Airways, Inc.*, 399 F. Supp. 335, 339 (S.D. Tex. 1975); *Jackson v. City of Dallas*, 443 S.W.2d 771, 780 (Tex. Civ. App.--Dallas 1969), *rev'd on other grounds*, 450 S.W.2d 62 (1970); *Simpson v. Dallas Ry. & Terminal Co.*, 143 S.W.2d 416, 418 (Tex. Civ. App.-- Dallas 1940, writ dism'd); *see also* 13 C.J.S. *Carriers* § 508, at 458 (1990) (stating that common carrier

unreasonably or arbitrarily restricts the cause of action. Ultimately, this is a question of fact that is inappropriate to the opinion process.[35] We believe, however, that a court would find the restriction unreasonable.

As we have indicated, the legislative purpose for article 9030, section 2(a)'s limitation on liability is to reduce the amount of liability insurance an excursion train operator must carry. The legislature thereby hoped to reduce the ticket price excursion train operators charge and increase tourism dollars flowing to towns along the trains' routes. The legislature did not estimate the article's impact on either ticket prices or revenues from tourists.

We note that the statute accomplishes its purposes at the expense of injured passengers, and particularly at the expense of passengers involved in a large accident. Under section 2(a), the operator's liability is limited to $5,000,000 *per occurrence*. While a court may find that the statute provides meaningful access to the courts for one or two persons injured in an excursion train accident, we doubt a court would find the same for a train accident involving, for example, fifty passengers. Furthermore, we question whether a court would find that a decrease in ticket prices, the size of which the legislature has not estimated, and the increase in tourist dollars, the size of which the legislature has not estimated, justify limiting the damages injured passengers may receive. The purported decrease in ticket prices is even more speculative when we note that article 9030, section 2(a) does not preclude a commercial train operator such as Union Pacific Rail Corporation from attaching any legal condition it desires to a contract with a train that wishes to use the commercial train operator's trackage. Accordingly, nothing prohibits the commercial train operator from demanding as much insurance coverage as it wishes. Similar to the statute examined in *Lucas*, section 2(a) places the burden of (possibly) lower ticket prices and (possibly) more tourism dollars "upon those persons who are most severely injured and therefore most in need of compensation."[36] Finally, the legislature has not provided an alternative source, such as the patient-compensation fund mentioned in *Lucas*, from which injured passengers may collect damages above and beyond the $5,000,000 damages they may collect under section 2(a).

---

(footnote continued)

is liable for slightest negligence, even if third party's concurring negligence contributes primarily to accident).

[35]*See, e.g.,* Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[36]*Lucas v. United States,* 757 S.W.2d 687, 692 (Tex. 1988) (quoting *Carson v. Maurer,* 424 A.2d 825, 837 (N.H. 1980)).

For all of these reasons, we believe a court would find the limitation on liability in V.T.C.S. article 9030, section 2(a) contravenes article I, section 13 of the Texas Constitution.[37]

## S U M M A R Y

To determine whether V.T.C.S. article 9030, section 2(a) contravenes article I, section 13 of the Texas Constitution, a court would apply a two-pronged analysis. The court would consider first whether section 2(a) restricts a cognizable common-law right of action. Next, the court would consider whether, in light of the purpose and basis of the statute, the statute unreasonably or arbitrarily restricts that right. A court probably would find that the limitation on liability in V.T.C.S. article 9030, section 2(a) contravenes article I, section 13 of the Texas Constitution.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General

---

[37]A court is less likely to conclude that V.T.C.S. article 9030, section 2(a) violates the Due Process or Equal Protection Clauses of the Unites States Constitution. The United States Court of Appeals has concluded that the limitation on damages in V.T.C.S. article 4590*i*, section 11.02 (the statute at issue in *Lucas*) was consistent with these constitutional provisions. *Lucas v. United States*, 807 F.2d 414, 417, 421-22 (5th Cir. 1987).

The Texas Supreme Court has, on the other hand, suggested that limitation provisions such as article 4590*i*, sections 11.02 and 11.03, which are similar to the limitation statute about which you ask, may violate Texas Constitution article I, section 3 or article III, section 56. *See Lucas v. United States*, 757 S.W.2d 687, 689 n.1 (Tex. 1988).