Roger S. BRAUGH, d/b/a Braugh
Ranches, Appellant,

v.

B. F. PHILLIPS, Jr., Appellee.

No. 1189.

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 13, 1977.

Rehearing Denied Nov. 10, 1977.

Bruce D. Viles (on appeal only), Wood, Burney, Nesbitt & Ryan, Corpus Christi, Glusing & Sharpe, Kingsville, for appellant.

Robert Patterson, Keys, Russell, Seaman & Mansker, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

This suit was brought by B. F. Phillips, Jr., for the return of stallion service fees paid under breeding contracts, dated September 20, 1973, whereby two mares owned by Phillips were bred to a stallion owned by Roger S. Braugh, d/b/a Braugh Ranches.

Each of the breeding contracts, in paragraph 8, provided for refund of the stallion service fee if a live foal did not result from the mating. The refund was conditioned upon notification of Braugh by telegraph or certified mail within 48 hours of an abortion by the mare or the failure of the mare to produce a live foal. That paragraph further specified:

". . . Such first notification must be followed within 14 days of said mare's foaling or aborting by a certified veterinarian's statement giving the particulars to substantiate the fact that a live foal failed to result from the mating. If such first notification and such veterinarian's statement are not received by Stallion Owner within the prescribed times, Stallion Owner's agreement to refund the stallion service fee shall become null and void."

In the trial court Phillips contended in his pleadings that no live foals resulted from the matings; that all conditions precedent had been complied with by him; if not, that compliance had been waived by Braugh. Braugh contended that Phillips had not performed the conditions precedent and that consequently, under the terms of the two breeding contracts, he was under no obligation to return the service fees.

Trial was before a jury which answered in plaintiff Phillips' favor six special issues involving elements of substantial performance, waiver and estoppel. The trial court entered judgment on the verdict that Phillips recover the $10,000.00 in service fees, interest and costs. Braugh appeals from that judgment. We affirm.

The issues, each of which was answered "yes", are as follows:

### "ISSUE NO. 1

Do you find from a preponderance of the evidence that the Plaintiff notified the Defendant that no live foal would be born as the result of the breeding of Truxton King and the mares Burning Match and Faquir Girl?

The term 'notified' as used in this issue means such notification to the Defendant as would enable the Defendant to make a determination of whether or not a live foal would result from the breeding of Truxton King and the mares Burning Match and Faquir Girl.

### ISSUE NO. 2

Do you find from a preponderance of the evidence that the Defendant intended, by his letter of August 8, 1974, to require the Plaintiff to furnish only a veterinarian's statement to the effect that the mares were not pregnant, and no other notice, before the Defendant would refund the stallion service fees?

### ISSUE NO. 3

Do you find from a preponderance of the evidence that the Defendant, when he sent the Plaintiff his letter of August 8, 1974, did so with full knowledge that the Defendant could insist on the Plaintiff giving notice as stated in the breeding contracts?

### ISSUE NO. 4

Do you find from a preponderance of the evidence that prior to the time the Plaintiff sent the Defendant his letter of August 15, 1974, with the attached veterinarian's statement, the Defendant had, by his letter of August 8, 1974, led the Plaintiff reasonably to believe that the only further notice required before the Defendant would refund the stallion service fee would be to obtain a veterinarian's certificate to the effect that the two mares were not pregnant?

### ISSUE NO. 5

Do you find from a preponderance of the evidence that the Plaintiff relied on the conduct of the Defendant to the extent that in good faith he believed that no other notice would be required by the Defendant before the Defendant would refund the stallion service fee?

### ISSUE NO. 6

Do you find from a preponderance of the evidence that the Plaintiff would have filed the notice contained in Paragraph Eight (8) of the breeding contracts but for his belief that the Defendant would require only the notice contained in his letter of August 8, 1974, before refunding the stallion service fee?"

Appellant's basic position on appeal is that the appellee failed to comply with the terms of the contracts which called for compliance with conditions precedent by notice of non-pregnancy and delivery of a veterinarian's statement of particulars within specifically designated periods. Appellee counters by asserting that he is entitled to recover upon any of three theories submitted to the jury: substantial compliance (special issue 1); waiver (special issues 2 and 3); or estoppel (special issues 4, 5 and 6).

We will first resolve appellant's attacks on the charge as set out in his points 2, 5 and 10.

■ Appellant's point 2 challenges the submission of special issue 1 as immaterial. Appellant argues that the failure to specify the date on which notice was given made the jury's answer to special issue 1 evidentiary and thus immaterial. Appellant has waived the right to assert the error complained of here. This is so because in his objections to the charge about special issue 1 he does not complain that it is immaterial. Rule 272, T.R.C.P. states that any objection not presented is waived.

■ We note also that if the failure to include the date was error it was harmless error in that the judgment was supported by other issues. *Commercial Standard Insurance Company v. Ford,* 400 S.W.2d 934 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.); Rule 434, T.R.C.P. Appellant's point 2 is overruled.

■ Appellant in his point 10 complains that special issue 5 is ambiguous and that it is not limited to any particular conduct of the defendant. Appellant suggests that a proper submission of this issue would have included reference to Braugh's request that the mares be rechecked. Special issue 5 was submitted in the cluster with special issues 4 and 6 on the theory of estoppel. The purpose of special issue 5 was to establish good faith reliance by the plaintiff, an essential element for recovery by estoppel. See *Graham v. San Antonio Machine and Supply Corporation,* 418 S.W.2d 303 (Tex. Civ.App.—San Antonio 1967, writ ref'd n.r. e.).

Appellant has challenged issue 5 on the basis of notice or representation when submitted as estoppel. This question was an-

swered by special issue 4 when the jury found that refund was conditioned only on a veterinarian's certificate that the mares were not pregnant. Appellant, therefore, has raised error as to special issue 5 which is immaterial. The purpose of special issue 5 was to establish good faith reliance; therefore, the failure to clarify "no other notice" does not constitute error. The error asserted, if proper, should have been addressed to special issue 4. It was not. We therefore overrule appellant's point 10.

In his point 5 appellant alleges error in failing to submit the following requested issue on waiver:

"Do you find from a preponderance of the evidence that Defendant intended, by his letter dated August 8, 1974, to require Plaintiff in two weeks from August 8, 1974, to recheck mares Burning Match and Faquir Girl and to send Defendant a veterinarian's certificate to the effect that the mares were not in foal, before the Defendant would refund the stallion fee?"

■ It is clear that it is the trial court's duty to submit controlling issues which are raised by the pleadings and evidence. In so doing, however, the trial court is given discretion and is not required to follow the exact language of the pleadings. *Green v. Walgreen Drug Company of Texas,* 368 S.W.2d 688 (Tex.Civ.App.—Beaumont 1963, writ dism'd); Rule 279, T.R.C.P. One of the crucial issues of this case raised by the pleadings and evidence is whether the appellant had intentionally waived his right to compliance by the appellee with the notice provision of the breeding contracts. This issue was sufficiently submitted in special issue 2. The requested issue was, therefore, merely a different shade of the submitted issue, and there can be no error in the refusal to submit such an issue. *Texas & Pacific Railway Company v. Snider,* 159 Tex. 330, 321 S.W.2d 280 (1959); *Vahlsing Christina Corporation v. Ryman Well Service, Inc.,* 512 S.W.2d 803 (Tex.Civ.App. —Corpus Christi 1974, no writ). Appellant's point 5 is overruled.

Appellant next assails each of the jury findings on the basis that there was legally insufficient evidence to support the jury's answers; that there was factually insufficient evidence to support the jury's answers. In considering these points we will be guided by the usual rules in that regard as set out by the Supreme Court in *In Re: King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951) and the rules in Calvert's often cited treatise "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L. Review 361 (1960).

We deem it appropriate at this point to discuss some of the rules concerning waiver and estoppel. Then we will apply the evidence to those rules.

■ It is clear that performance of conditions precedent to a contract can be waived by either words or deeds. *Equitable Life Assur. Society of the United States v. Ellis,* 105 Tex. 526, 147 S.W. 1152 (1912); *Atomic Fuel Extraction Corporation v. Slick's Estate,* 386 S.W.2d 180 (Tex.Civ.App. —San Antonio 1964, writ ref'd n.r.e., 403 S.W.2d 784). Waiver, as it is commonly understood, is an intentional release, relinquishment, or surrender of a known right. *Ford v. Culbertson,* 308 S.W.2d 855 (Tex. Sup.1958); *Massachusetts Bonding and Insurance Company v. Orkin Exterminating Company,* 158 Tex. 124, 416 S.W.2d 396 (1967). It is essential that the right exist at the time of waiver, *Pennzoil v. Socony Mobil Oil Company,* 421 S.W.2d 416 (Tex.Civ. App.—El Paso 1967, no writ); that the person charged with waiver have actual or constructive knowledge of the right or privilege involved, *Carolina Ins. Co. v. Christopher,* 130 Tex. 245, 106 S.W.2d 138 (Tex. Com.App. 1937, opinion adopted); and that he intends to relinquish the right involved, *Houston Fire and Casualty Insurance Company v. Pritchard & Abbott,* 155 Tex. 120, 283 S.W.2d 728 (1955).

■ Estoppel is defined in general as conduct which causes the other party to materially alter his position in reliance on that conduct. It is essential, however, for recovery under estoppel that the party estopped signify his intent not to insist on the

performance of a condition or right at a time when performance of the condition is possible. If the conduct of the party charged with estoppel takes place after such performance of the duty or condition has become impossible, there can be no estoppel because the party asserting estoppel cannot show that his failure to perform was the result of reliance on the other party's conduct. *Graham v. San Antonio Machine and Supply Corporation,* supra.

▮ Waiver, however, may be effective after expiration of the time for performance of a condition has expired, if the condition which is asserted as waived is not a material part of the agreed equivalent of the obligor's promise and its non-performance does not materially affect the value received by the obligor. *United States Fidelity and Guaranty Company v. Bimco Iron and Metal Corporation,* 464 S.W.2d 353 (Tex.Sup.1971); *Graham v. San Antonio Machine and Supply Corporation,* supra. Further, waiver need not be founded on a new agreement, nor be supported by consideration, nor based on estoppel. *United States Fidelity and Guaranty Company,* supra.

▮ All of which brings us to an application of the evidence to the issues submitted by the trial court on waiver (issue 2 and 3) and estoppel (issues 4, 5 and 6) considering appellant's contentions about the legal and factual insufficiency of the evidence.

The evidence as developed by the record shows that the parties entered into two breeding contracts on September 20, 1973. Under those contracts two mares were delivered to the Braugh Ranch on April 17, 1974. Burning Match was bred on May 13th and 15th, 1974, and was checked in foal on June 4th and 16th, 1974. Faquir Girl was bred on May 23rd and 25th, 1974, and was checked in foal on June 11th, 16th and 24th. Each mare was "teased back" and had not come into heat by the day of departure of both from the Braugh Ranch on July 19, 1974. Acting upon the appellant's claim that the mares were pregnant appellee paid the stallion service fees in full.

After the mares had been returned to the Phillips Ranch they were checked by Dr. George W. Platt, appellee's veterinarian, and found to be open or without foal on August 2, 1974. Appellee says he notified the appellant of this fact by telephone on the same day. During that conversation appellant requested the return of the breeder's certificate and a veterinarian's statement that the mares had been examined and found not pregnant.

Subsequently and upon Braugh's request the mares were re-examined on August 6, 1974 and October 24, 1974, according to Phillips, and found not pregnant. On August 6, 1974, the parties had another telephone conversation and the appellant again requested the return of the breeding certificates and veterinarian's certificate that the mares had been checked and found not pregnant before the service fee would be refunded. On August 7, 1974, appellee mailed a letter to the appellant containing the breeding certificates. On August 8, 1974, appellant wrote to the appellee acknowledging a prior telephone conversation concerning the mares. The pertinent parts of that letter are as follows:

". . . I have been very pleased with our excellent record of getting mares in foal and I was very disappointed to hear that both of your mares are apparently not in foal at this time. I am hoping that possibly there has been some mistake and would *suggest* that you have these mares rechecked in a couple of weeks. At that time, if they are not in foal, please have your veterinarian send us a certificate stating that these mares are barren. Also, it would be necessary at that time, because of the demand for the services of TRUXTON KING, to let us know whether or not it would be your desire to rebreed in 1975 or to have your 1974 stud fees refunded. If you should want your stud fees refunded, it would be impossible for us to guarantee you seasons for 1975 at the current stud fee . . . ." (Emphasis supplied.)

In that letter appellant made no complaint that the appellee had failed to comply with

the first notice requirement of the contract. The jury, therefore, was entitled to infer from the letter and the telephone conversations that upon return of the breeding certificates accompanied by a certification of a veterinarian that the mares were not pregnant that refund or another opportunity for breeding would be provided.

Thereafter, on August 15, 1974, appellee wrote the appellant furnishing the veterinarian's certificate and informing the appellant that he would not rebreed the mares and that he desired a refund of his money less the appellant's costs of breedings. All of the foregoing evidence develops Braugh's intent to waive strict compliance with the notice requirements under paragraph 8 of the breeding contracts.

Support of the jury finding that Braugh had full knowledge on August 8, 1974, of his right to insist on strict compliance with the contractual provision is found in Braugh's and Phillips' testimony. Phillips, as noted previously, testified to two conversations occurring prior to August 8, 1974, and in each conversation the fact that the mares were not pregnant was communicated to Braugh. Further, Braugh testified that at least one of these calls transpired and that he was made aware that the mares were not pregnant. Support of this testimony is found in the letter itself which refers to "talking with you on the phone the other day" and then continues on to discuss the possible solutions to the non-pregnancy of the mares. So we hold that the evidence is legally and factually sufficient to support the jury's answers to the waiver issues (2 and 3).

As previously noted, for estoppel to be applicable the party against whom it is charged must signify his intent not to require performance at a time when performance is possible. Without this element the party charging estoppel could not rely upon the representation or actions of the other party to his prejudice.

The jury in answer to special issue 6 found that but for appellant's actions the appellee could have complied with paragraph 8 of the breeding contracts. With this we cannot agree. Appellee testified that he had not read the contracts. If the appellee was unaware of paragraph 8 it is apparent that he could not have intentionally complied with its requirements. This error, however, is harmless in that support for the trial court's judgment can be found on other submissions (waiver). *Commercial Standard Insurance Company v. Ford,* supra; Rule 434, supra. All of appellant's "no evidence", "insufficiency of the evidence", and "as a matter of law" points are overruled.

Appellant also brings error in his point 20 complaining of the trial court's refusal to allow cross-examination of Phillips on a trial brief which stated that Phillips first gave notice of non-pregnancy "on or about August 6, 1974". It is clear that points of error must be supported by the record; if not, that alone requires that they be overruled. *Gould v. City of El Paso,* 440 S.W.2d 696 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.); *Richardson v. Raby,* 376 S.W.2d 422 (Tex.Civ.App.—Tyler 1964, no writ). A complete review of the record reveals that the trial brief which forms the basis of appellant's error has not been brought forward. Appellant's point 20 is overruled.

We have carefully considered all of appellant's points of error and they are all overruled.

One other matter to be resolved is appellee's contention in his brief that we are without jurisdiction to consider appellant's points of error for the reason that there is nothing in the record to indicate appellant has properly perfected his appeal by filing a motion for new trial within the ten-day period provided by Rule 329b, T.R.C.P. After appellee had filed his brief appellant requested of us leave to file a supplemental transcript showing that he had filed his motion for new trial within the ten-day period. We granted the request and the supplemental transcript does reflect appellant's timely filing of his motion for new trial. Appellee's jurisdictional contention is overruled.

The judgment of the trial court is affirmed.