NO. 12-01-00112-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS



ROYCE ROBERTS &

MELBA ROBERTS, §
 APPEAL FROM THE 241ST

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


DON CLARK & 

OPAL CLARK, §
 SMITH COUNTY, TEXAS

APPELLEES






 

 The previous opinion delivered on February 13, 2002 is withdrawn and set aside, and the
following opinion is entered in lieu thereof.

 Royce and Melba Roberts appeal from a summary judgment entered in favor of Don and
Opal Clark in a suit filed by the Clarks for breach of a contract for the sale of real property. In two
issues, the Robertses contend the trial court erred in granting the summary judgment because fact
issues exist. We affirm.


Background

 Don and Opal Clark (the "Sellers") agreed to sell 340 acres of land to Royce and Melba
Roberts (the "Buyers"). The parties drafted and executed a contract wherein the Buyers agreed to
pay $1.6 million in certified funds on or before May 1, 2000. Thereafter, the Buyers arranged to
obtain a loan from AgriLand Farm Credit Services in the amount of $1.3 million. The Buyers
transferred $300,000 in cash to AgriLand. AgriLand was going to forward the $300,000 to the title
company at the same time as it wire transferred the $1.3 million loan proceeds. On May 1, 2000,
the Buyers and AgriLand's agent, Brian Harris, went to the title company for closing. The Buyers
signed all necessary documents. However, AgriLand did not wire transfer the funds, refusing to do
so until the Sellers had signed the deed and placed it in escrow with the title company. The Sellers
did not attend closing, as they insisted on being paid before signing the deed. 

 The Sellers filed suit for breach of contract, asking the court to declare the contract
terminated because the Buyers did not tender payment on or before May 1, 2000 as required by the
contract. The Buyers counterclaimed for specific performance. The Sellers moved for a traditional
summary judgment (1), asserting that the Buyers failed to tender $1.6 million on or before May 1, 2000
and, inasmuch as the contract required payment of the purchase price before the Sellers' duty to sign
the deed arose, the Sellers were excused from performing under the contract and the Buyers are not
entitled to specific performance. The trial judge agreed. The trial court's judgment ordered the
contract terminated and that the Buyers take nothing on their counterclaim for specific performance.


Admissibility of Evidence

 Initially we address the Buyers ninth and final argument under their first issue in which they
assert the trial court erred in admitting inadmissible evidence in support of the Sellers' motion for
summary judgment. The brief refers rather generally to evidence that was objected to as hearsay,
conclusory, not based on personal knowledge, and improper opinions. 

 Admission or exclusion of evidence is a matter within the trial court's discretion. 
Maldonado v. Frio Hosp. Ass'n., 25 S.W.3d 274, 277 (Tex. App.- San Antonio 2000, no pet.). In
reviewing a cause tried before the court, the appellate court generally assumes that the trial court
disregarded any incompetent evidence. Gillespie v. Gillespie, 644 S.W.2d 449, 450 (Tex. 1982). 
Further, the admission of incompetent evidence does not require reversal when there is competent
evidence to authorize its rendition. Id. There is no reversible error if the evidence in question is
cumulative or is not controlling on a material issue dispositive of the case. Sanders v. Shelton, 970
S.W.2d 721, 727 (Tex. App.- Austin 1998, pet. denied). Thus, evidentiary rulings will not cause
reversal unless an appellant demonstrates that the entire case turns on the evidence improperly
admitted. Wolfe v. Wolfe, 918 S.W.2d 533, 538 (Tex. App.- El Paso 1996, writ denied). We
determine whether the case turns on the evidence at issue by reviewing the entire record. Gillespie,
644 S.W.2d at 450.

 Claiming that it is hearsay, the Buyers objected to the statement in Don Clark's affidavit that
he had been told by representatives of the title company and certain individuals that the funds would
not be available at the time he was to sign the deed. They made the same objection to statements in
Amy Richey's affidavit. Richey, a friend of the Clarks, stated that Dee Curtis of the title company
told her it would not be possible for the sellers to receive their funds on May 1 and that Curtis
explained the Sellers' options. Richey also stated that the Clarks said they were unwilling to extend
closing or wait until May 2 to receive the money. Sue Ray, with First American Title Insurance
Company, testified that she explained the wire transfer process to the Sellers and told them it would
not be possible to deliver the funds to them on May 1. Don Clark testified that he was unwilling to
sign the deed until he had certified funds in his hands. He explained that he did not go to the title
company on May 1 because he was told the money was not there. Accordingly, as there is competent
summary judgment evidence virtually identical to the complained-of hearsay evidence, any error in
its admission is not harmful. Gillespie, 644 S.W.2d at 450.

 The Buyers complain that the trial court overruled their other objections to other portions of
the Sellers' summary judgment proof, which they allege is inadmissible as conclusory, not based on
personal knowledge, or as improper opinions. Without elaboration, they refer us to several places
in the record, including the objection they filed in the trial court which, in turn, also refers us to
several places in the record. They do not set out the remainder of the objected-to testimony or
discuss their complaints about it. Mere reference to record pages does not sufficiently identify the
court's actions complained of. See Tex. R. App. P. 38.1(h); Smith v. Valdez, 764 S.W.2d 26, 27
(Tex. App.- San Antonio1989, writ denied). Further, as to the evidence complained of here, we
assume the trial court disregarded any improperly admitted evidence. Gillespie, 644 S.W.2d at 450. 
We overrule that portion of Buyers' first issue complaining of the admissibility of certain evidence.


Breach of Contract

 In their first issue, the Buyers assert that the trial court erred in holding as a matter of law that
the Buyers breached the contract, the contract terminated, and the Sellers' performance is excused. 
They discuss numerous alleged errors made by the trial court and assert that several fact issues
remain. In their second issue, they contend the trial court erred in holding that the Buyers are not
entitled to specific performance as a matter of law. Among other arguments, they contend there are
fact questions regarding whether the contract requires the Buyers to make payment before the Sellers
execute the deed and whether tender of a wire transfer satisfied the contract.

Standard of Review

 To obtain a summary judgment, the movant has the burden of showing that there is no
genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true. Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor
of the non-movant and any doubts resolved in its favor. Id. 

 A plaintiff, as movant, must conclusively prove all essential elements of his claim. MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam). Once a movant has established the right
to a summary judgment on the issues presented, the non-movant has the burden of introducing
evidence that raises issues of fact. Mott v. Montgomery County, 882 S.W.2d 635, 640 (Tex. App.-
Beaumont 1994, writ denied). 

Breach of Contract

 A plaintiff asserting breach of contract must establish, inter alia, the existence of the contract
sued upon, his compliance with the terms of the contract or that he is ready, willing, and able to
comply but has a valid excuse for his nonperformance, and the defendant's breach of the contract. 
Stegman v. Chavers, 704 S.W.2d 793, 795 (Tex. App.- Dallas 1985, no writ). A breach of contract
occurs when a party fails or refuses to perform an act that it expressly promised to do. Methodist
Hosps. v. Corporate Communicators, Inc., 806 S.W.2d 879, 882 (Tex. App.- Dallas 1991, writ
denied). 

 The contract sued upon was placed in evidence. Further, as Buyers counterclaimed for
specific performance, the existence of the contract is not questioned. Sellers proved the first element
of their cause of action. The remaining elements require closer examination. Sellers assert the
contract clearly requires the Buyers to tender payment on or before May 1, 2000 before the Sellers'
duty to execute the deed even arises. In other words, Sellers contend that tender of payment is a
condition precedent. Buyers disagree, asserting that it is a covenant.

 In construing a written contract, the primary concern of the court is to ascertain the true
intentions of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). Courts examine and consider the entire writing and give effect to all provisions of the
contract so that none will be rendered meaningless. Id. If the contract is so worded that it can be
given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will
construe the contract as a matter of law. Id. 

 The pertinent portions of the contract provide:


 2. PURCHASE PRICE. Buyers hereby agree to pay, and Sellers agree to accept for the property
attached as Exhibit "A" to this contract, the sum of ONE MILLION SIX HUNDRED THOUSAND
DOLLARS ($1,600,000.00) in certified funds. Said $1,600,000.00 to be paid on or before May 1,
2000. 


. . . 


 3. TITLE DOCUMENTS AND SURVEY. If the Buyers make the payment herein called for and
shall fully keep and perform each and all of the covenants made by the Buyers, the Sellers shall make,
execute and deliver to the Buyers the Sellers' Warranty Deed conveying the aforesaid property free
and clear of all liens and encumbrances except for the taxes due for 1999.


. . .


 7. CLOSING. The closing of the sale shall be on or before May 1, 2000, which shall be extended
on the occurrence of the following: The closing day shall be extended for a period not to exceed thirty
(30) days if objections to the title and/or survey have been discovered that have not been cured, in
order to cure such objections; PROVIDED, HOWEVER, in no event shall the closing date be
extended beyond June 1, 2000. The closing shall take place at First American Title, Lindale, Texas.

. . .


 Sellers maintain that the requirement that Buyers tender payment on or before a certain date
is a condition precedent to their duty to execute the deed. A condition precedent is an event that
must happen or be performed before a right can accrue to enforce a contract. Hohenberg Bros. Co.
v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). While no particular words are necessary
for the existence of a condition, such terms as "if," "provided that," "on condition that," or some
other phrase that conditions performance, usually connote an intent for a condition rather than a
promise. Id. The language in an agreement is to be given its plain grammatical meaning unless to
do so would defeat the parties' intent. Fox v. Thoreson, 398 S.W.2d 88, 92 (Tex. 1966).

 The contract specifically states in paragraph two that Buyers agree to pay $1.6 million on or
before May 1, 2000. Paragraph three states, in pertinent part, that if the Buyers make the payment
required in paragraph two, the Sellers shall make, execute, and deliver the deed. Giving this
language its plain, grammatical meaning, the parties use of the word "if" in paragraph three indicates
their intent to require the Buyers to tender payment before the Sellers' duty to execute the deed
would arise. Hohenberg Bros., 537 S.W.2d at 3. Further, the word "shall" as used in contracts is
generally mandatory, operating to impose a duty. Black's Law Dictionary 1379 (7th ed. 1999). 
Consequently, tender of payment by the Buyers is a condition precedent to execution of the deed by
Sellers and, once payment has been tendered, the Sellers will have a duty to sign the deed. 
Accordingly, we must next determine if the Buyers' acts constitute tender of payment on or before
May 1, 2000. 

 A tender is an unconditional offer by a debtor or obligor to pay another a sum not less in
amount than that due on a specified debt or obligation. Baucum v. Great Am. Ins. Co., 370 S.W.2d
863, 866 (Tex. 1963). A valid and legal tender of money consists of the actual production of the
funds and offer to pay the debt involved. The tenderer must relinquish possession of it for a
sufficient time and under such circumstances as to enable the person to whom it is tendered, without
special effort on his part, to acquire its possession. Id.

 Royce Roberts testified that he did not personally have possession of the $1.6 million, but
relied on AgriLand to provide the funds. He attended closing and was willing and ready to close the
deal. He signed some documents and left.

 AgriLand's local agent, Brian Harris, testified that he planned to wire the Roberts' $300,000
to the title company at the same time the remaining $1.3 million was wired from AgriLand's Austin
office. He was to activate the wire as soon as he knew all documents were signed by both parties. 
The Buyers signed everything they needed to sign on May 1. All that remained to be done before
the wire could be activated was for the Sellers to sign the deed. Harris testified that he was willing
and able to close the loan and pay the money on May 1. However, he told the Buyers that he could
not "cut a check" that day because the Sellers were not at closing to sign the deed and he could not
fund until the deed was signed. He reiterated that he did not deliver $1.6 million to First American
Title Insurance Company on May 1 because all documents were not signed. He would not deliver
the funds until the Sellers had signed the deed which gave AgriLand a vendor's lien on the entire 340
acres under contract.

 Sue Ray, with First American Title Insurance Company, testified that, prior to May 1, she
explained to the Sellers that AgriLand would not issue the wire transfer until the Sellers signed the
deed. Therefore, the money would not be at the title company at the time of closing. She testified
that the Sellers always expected their money to be paid at closing. The Sellers went to the title
company's office on May 2, but would not sign because the money was not there. Ray testified that
AgriLand refused to bring the funds to closing but that the Sellers never refused to attend closing. 
She stated that the Sellers had no problem with signing the deed with the vendor's lien if the loan
proceeds were at the title company. She specifically stated that AgriLand did not tender the funds
on or before May 1. She testified that the term "certified funds" can mean either a wire transfer or
a cashier's check. Finally, she explained, neither the Buyers nor their lender tendered $1.6 million
to her on or before May 1 and that is why the transaction did not close.

 Dee Curtis, an escrow agent with First American Title Insurance Company, also testified that
they would not receive the wire transfer until the Sellers signed the deed and the Sellers said they
would not sign until they had the money. She also stated that neither the Buyers nor the lender
tendered the money on or before May 1.

 Don Clark testified that the Buyers were to pay on or before May 1, 2000, the funds were not
available on that date, and that is the basis of his breach of contract claim. He anticipated getting
the money at the time he signed the deed. He was not willing to sign the deed until he had certified
funds in his hands.

 The Sellers' summary judgment evidence consists of testimony from several different
witnesses who all testify to the same pertinent facts. The Sellers expected to be paid before they
signed the deed. The lender, AgriLand, insisted that the Sellers sign the deed before it would begin
the process for sending the money to the title company which would process it through their system
and then turn it over to the Sellers. Although Roberts testified that he was willing and ready to close
the deal, he did not control the money. Harris testified that he could start the wire transfer process,
but not until after the Sellers signed the deed. Therefore, even though he stated he was ready, willing
and able to close the deal, he could do nothing further until after the Sellers signed the deed. The
testimony is clear that the money was not at the title company on or before May 1, 2000. Therefore,
there was no actual production of funds and the Buyers never relinquished possession of $1.6 million
so the Sellers were never able to acquire its possession. See Baucum, 370 S.W.2d at 866. 
Accordingly, as the tender of the funds was conditioned upon the Sellers' act of signing the deed,
no legal tender occurred. Id. 

 As the Sellers have conclusively proven that the Buyers did not comply with the condition
in the contract that they make payment on or before May 1, 2000, the Sellers have shown that the
Buyers breached the contract. Methodist Hosps., 806 S.W.2d at 882. It might be argued that the
application of this rule produces a harsh result since AgriLand was merely attempting to do business
as usual and its requested procedure was not unreasonable. However, the Sellers are entitled,
reasonably or unreasonably, to rely upon their legal rights under the terms of the contract signed by
the parties. See Baucum, 370 S.W.2d at 867. 

 The evidence shows the Sellers were ready, willing and able to comply with the terms of the
contract but had a valid excuse for nonperformance under the terms of the contract. When a promise
is subject to a condition precedent, there is no liability or obligation on the promissor and there can
be no breach of the contract by him until and unless such condition or contingency is performed or
occurs. Toland v. Kaliff, 435 S.W.2d 260, 262 (Tex. Civ. App.- San Antonio 1986, no writ). Thus,
the Sellers met their burden to show the existence of the contract sued upon, that they were ready,
willing, and able to comply but had a valid excuse for their nonperformance, and that the Buyers
breached the contract and the Sellers conclusively proved all essential elements of their claim. See
MMP, Ltd., 710 S.W.2d at 60; Stegman, 704 S.W.2d at 795. We conclude the Sellers' summary
judgment evidence proves as a matter of law that the Buyers breached the contract, the contract
terminated, and the Sellers' performance was excused.

 The burden then shifted to the Buyers to present summary judgment evidence raising a fact
question to defeat the Sellers' summary judgment. Mott, 882 S.W.2d at 640. In their response to
the Sellers' motion for summary judgment, the Buyers listed twenty fact issues they allege to exist. 
These issues involve the elements of breach of contract, the question of the sufficiency of tender of
payment, and the question of whether the payment term is a condition precedent. We have already
addressed these issues and found no fact issue remaining. Almost half of their named fact questions
are immaterial as they involve the day after the contractually agreed-to date of closing or the form
of payment, which is not at issue here. 

 Additionally, the Buyers contend there are fact issues regarding their affirmative defenses
of estoppel and waiver. The Buyers assert that the Sellers are estopped from claiming breach of
contract because the Sellers themselves breached the contract by not appearing at closing on May
1 and by failing to sign the deed. They further assert that the Sellers' partial performance carrying
over to May 2 acted to estop them from denying the closing date was extended to May 2. The
Buyers also assert the Sellers waived any claim for breach of contract by agreeing to appear on May
2 for the purpose of closing. In support of their response, the Buyers presented deposition testimony
of Brian Harris, Sue Ray, Don Clark, and Amy Richey, Royce Roberts' affidavit, and the contract
at issue. This evidence covers essentially the same facts that were presented to the trial court in the
Sellers' summary judgment evidence.

 A non-movant asserting an affirmative defense has the burden of presenting proof raising a
fact issue as to each element of his defensive claim. McCall v. Trucks of Texas, Inc., 535 S.W.2d
791, 794 (Tex. Civ. App.- Houston [1st Dist.] 1976, writ ref'd n.r.e.). Estoppel is defined in general
as conduct which causes the other party to materially alter his position in reliance on that conduct. 
Braugh v. Phillips, 557 S.W.2d 155, 158 (Tex. Civ. App.- Corpus Christi 1977, writ ref'd n.r.e.). 
To invoke the doctrine of estoppel, all the necessary elements of estoppel must be present. Douglas
v. Aztec Petroleum Corp., 695 S.W.2d 312, 317 (Tex. App.- Tyler 1985, no writ). One of its
essential requisites is a reasonable or justified reliance on the conduct or statements of the person
sought to be estopped by the person seeking the benefit of the doctrine. Id. The purpose of estoppel
is for the protection of those who have been misled by that which upon its face was fair. Id. A
person may not assert estoppel for the purpose of shielding himself from the results of his own
dereliction of duty. Id.

 Performance of conditions precedent to a contract can be waived by either words or deeds. 
Braugh, 557 S.W.2d at 158. A waiver is an intentional release, relinquishment, or surrender of a
known right. Id. In order to establish a waiver of rights under a contract, there must be proof of an
intent to relinquish a known right. Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 750
(Tex. App.- El Paso 2000, no pet.).

 Buyers claim that they are excused from performance because the Sellers breached by not
appearing or signing the deed on May 1 and because they did appear at the title company on May 2. 
As we have discussed, the Sellers were not required to sign the deed until after Buyers tendered the
funds and, as that never happened, it cannot be said that Sellers breached by not appearing on May
1 or by failing to sign the deed. Toland, 435 S.W.2d at 262. Accordingly, this cannot be the basis
for finding Sellers are estopped from asserting breach of contract. 

 We turn next to Buyers' argument that Sellers' appearance at the title company on May 2
works as an estoppel and waiver. For Buyers to recover under their estoppel and waiver theories
they must raise a material fact issue regarding whether Sellers intended to hold Buyers to the
condition precedent that they tender the funds on or before May 1 and before the Sellers signed the
deed or whether they signified their intent to release Buyers from that condition precedent. See
Hornburg, 20 S.W.3d at 750; Braugh, 557 S.W.2d at 158-59. In other words, they must raise a
material fact issue regarding whether the Sellers intended to relinquish their right to withhold their
signatures until after the Buyers tendered the money. We look to the summary judgment evidence
to determine if there was any conduct by the Sellers relied on by the Buyers to materially alter their
position. 

 The summary judgment evidence shows that closing was scheduled for 2:00 p.m. on May 1
and, due to time consuming closing and banking procedures, the title company's agents would be
unable to hand a cashier's check to the Sellers on May 1 even if the wire transfer process was started
on that day. The Sellers did not appear at the title company on May 1 because Sue Ray had told
them the money would not be there on that day and they had no intention of signing the deed until
they had been given the funds. The Sellers told Sue Ray they would appear on May 2. This
information was relayed to Harris. The Sellers testified that they appeared at the title company on
May 2, were told the money was not there and they would not have it until they signed, so they left. 
They always insisted on being given the money before they signed the deed. Accordingly, there is
no showing the Sellers intended to release the Buyers from the requirement that they tender the funds
before the Sellers signed the deed. 

 Although the Buyers were, on May 1, aware that the Sellers planned to appear on May 2, this
did not lead to their failure to tender. The evidence shows that the Buyers' failure to tender on May
1 was due to the bank's refusal to wire the money before the Sellers signed the deed. There is no
evidence that their failure to tender was a result of their reliance on the Sellers' statement that they
would be at the title company on May 2. They did not alter their position because of the Sellers'
actions or statements. Therefore, even if it can be said that there is a fact question regarding whether
the Sellers' act of going to the title company on May 2 extended the contractual deadline from May
1 to May 2, the Buyers have not met their burden to overcome the summary judgment because they
have not shown reliance on the Sellers' act or statements and did not materially alter their position. 
Douglas, 695 S.W.2d at 317; Braugh, 557 S.W.2d at 158. Further, the date of tender is not a
material issue under the facts of this case. This case turns on the question of who must act first,
Buyers or Sellers, which we have already decided. Moreover, even if the Sellers' acts extended the
deadline, the outcome would be the same as the Buyers did not tender the money on May 2.

 Finally, there is no showing the Buyers were misled by the Sellers' failure to appear on May
1 or their appearance on May 2. The Buyers cannot assert estoppel to shield themselves from the
results of their failure to perform the condition precedent. Douglas, 695 S.W.2d at 317. We
determine that the Buyers did not raise a material fact issue on their affirmative defenses of estoppel
and waiver. See Hornburg, 20 S.W.3d at 750; Douglas, 695 S.W.2d at 317. As the determination
of the issues thus far discussed are dispositive of the case, we need not address the Buyers remaining
arguments. We overrule Buyers' first and second issues.


Conclusion

 We conclude that the trial court did not err in granting Sellers' motion for summary judgment
ordering the contract terminated and that the Buyers take nothing on their counterclaim. 

 We affirm the trial court's judgment. 

 LEONARD DAVIS 

 Chief Justice



Opinion delivered February 20, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.




(PUBLISH)
1. See Tex. R. Civ. P. 166a(c).